BROOKS SAYRES v. THE INHABITANTS OF SPRINGFIELD IN THE COUNTY OF ESSEX.

1. An action of DEBT will not lie for the breach of a contract to maintain the poor of the township by reason whereof the township was obliged to pay a sum of money for the maintenance of a pauper.  The action should ·be *case.*

2. No person is to be considered a pauper to receive support except such as a justice of the peace has by his order previously declared.

---

The facts in this cause are sufficiently developed in the opinions delivered.

*W. Pennington and Halsey* for the plaintiff.

*W. Chetwood* for defendant.

EWING, C. J.   The plaintiff in certiorari seeks to reverse a judgment rendered against him in the Inferior Court of Common Pleas of the county of Essex on appeal from a court for the trial of small causes.

The first ground of error alleged is, that the action below was misconceived, having been " debt " instead of " trespass on the case."

All suits brought or commenced before any justice of the peace on any demand founded on simple contract for the payment of money only, are required to be in the name and style of actions of debt.   *Rev. Laws* 643, *sec.* 51.

The plaintiffs in their state of demand allege that the defendant in consideration of $242 agreed to be paid and actually paid by them to him, " did agree with the plaintiffs," " to provide for, keep and maintain all the poor of the said township of S. from the first of May in the year aforesaid, until the first day of May, 1822, and to be at all expense for the poor aforesaid, during the time aforesaid, and to indemnify the plaintiffs and keep them freed and indemnified from all costs, charges and expenses for the said poor during the time aforesaid."   Having thus set forth the contract they state the breach as follows :   " Yet that the said defendant has not provided for, kept and maintained all the poor of the said township, and indemnified, and kept freed and indemnified the said plaintiffs from all expenses, costs and charges for the said poor during the time aforesaid, but has neglected and refused so to do, and that the plaintiffs have been obliged to pay and have paid to Isaac Nichols overseer of the poor of the township of Newark, $19.47 cts. for the support of Jemima Meeker, a pauper of the township of S. during the time aforesaid, and for the physician's bill, &c., which sums with interest amount to $40, which the said defendant refuses to pay, and for which the plaintiffs bring this suit."

The contract on the part of the defendant here set forth is, to maintain the poor of the township, and to indemnify

Sayres *v.* Inhabitants of Springfield.

the plaintiffs from all expenses for them during a certain period, and is not a contract for the payment of money. The object of this suit is indeed the recovery of money, and money which the plaintiffs aver they were obliged to pay because Sayres did not fulfil his contract. But the facts which shew a breach of the contract and which may give a right of action upon the contract, are wholly distinct from the contract itself. It is upon the contract, that the action is founded. It is the nature of the contract which according to the provision of the statute determines the style of action.

Trespass on the case is clearly the style of action adapted to the matter set forth in the state of demand, as it is obviously not within the 51st section above mentioned; and the action having been commenced and the process issued in debt has been misconceived.

This error has been repeatedly adjudged in this court to be sufficient cause for reversal, both before and since the 3d section of the act of the 5th of February, 1812, and in my opinion rightly; for the 41st section of the act of 1818 (*Rev. Laws* 641) not only expressly requires the justice to enter in his docket the style and nature of the action which surely cannot be correctly done and according to the meaning and spirit of the law, if a style and nature be entered wholly variant from the real cause of action, but the irregularity here complained of may within the just construction of the act of 1812 " tend to defeat or impair the substantial right or interest of the party." A defendant sued in trespass, and conscious he has done nothing, and the plaintiff can prove nothing, which will support such an action, will absent himself at the return of the process, but if this irregularity be sanctioned, he may find his substantial right and interest impaired and defeated by a judgment in debt for a claim long since satisfied, or by the preclusion from the recovery of what should have been an offset most justly and honestly due to him.

The following cases sustain the validity of this objection: *Crane's case*, (1791) 1 *Coxe* 53; *Ludlam* v. *Wood*, (1806) *Pen.* 55; *Wetherby* v. *Morgan*, (1806) *Pen.* 83; *Chattin* v. *Payday*, (1806) *Pen.* 138; *Warren* v. *Fisher*, (1807) *Pen.* 240; *Lanning* v. *Howell*, (1807) *Pen.* 256; *Ricker* v. *Jacobus*, (1807) *Pen.* 328; *Hull* v. *Phillips*, (1808) *Pen.* 367; *Alderman* v. *Chard*, (1808) *Pen.* 459; *Hornor* v. *Parker and Hornor*, (1810) *Pen.* 648; *Sayre* v. *Rose*, (1811) *Pen.* 743; *English* v. *Hornor*, (1811) *Pen.* 816; *Outcalt* v. *Hoffman*, (1811) *Pen.* 818; *Lippincott* v. *Smith*, (1818) 1 *South.* 97; *Little* v. *Gibbs*, (1818) 1 *South.* 211; *Van Horn* v. *Hamilton*, (1819) 2 *South.* 477; *Pierson* v. *Pierson*, (1822) 1 *Halst.* 161; *Bilderbach* v. *Pouner*, (1823) 2 *Halst.* 64; Econtra *Satterthwaite* v. *Morgan*, (1812) *Pen.* 962.

On this ground therefore I am of opinion, the judgment should be reversed; and I will not refrain from seizing the occasion, and it can hardly be deemed travelling out of the record, especially as I have high and honorable precedent, (1 *Halst.* 123) to bear my testimony against the practice of selling the poor, as it is called, alike disgraceful to humanity, and repugnant to the sound principles, real design, and generous provision of our laws for their support.

I should examine no other of the reasons assigned for the reversal and discussed at the bar, but that we may thereby perhaps save these parties from further litigation, at least for the purpose of obtaining a decision of this court.

It is insisted, that this judgment ought to be reversed because the plaintiffs below did not on the trial before the Common Pleas produce the order of a justice, prescribed by the 11th section of the act of 1774, for the settlement and relief of the poor.

In examining this reason I shall consider the facts to be, that J. M., was not at and before the agreement was made between the overseers and Sayre, an acknowledged and supported pauper of the township; that afterwards and before she went to Newark where the expense which has caused

the present controversy was incurred, the overseers believ-
ing her to have fallen into such poor circumstances as to
deserve relief and to have a settlement in S. required Sayres
to provide for her as one of the paupers of that township ;
that Sayres expressed his willingness to do so on the pro-
duction of an order of a justice of the peace, but objected
without such order; and that no such order was shewn him
or was ever made. Such I understand to be the facts as
expressed in the state of the case furnished to the court,
although not there very explicitly stated, as to time. Whether
the result should have differed if before the agreement she
had been an acknowledged and supported pauper, it is not
necessary to examine or decide.

Sayres, by his agreement, was bound "to provide for,
keep and maintain all the poor of the township of S." But
what poor? To whom does this term extend? Certainly
not to every poor person to be found in the township :—but
to the legal paupers—to such persons as the overseers of
the poor were, without this agreement, to have provided for,
kept and maintained. Who are such poor? The persons
whom a justice of the peace has, by his order, previously
declared. By whom are the poor sustainable at the public
charge to be ascertained? Who is to select the proper
objects of the public bounty? Who is to decide whether
persons are in such poor circumstances as to deserve relief?
Who is to order an allowance to be made to such poor per-
sons? The overseer of the poor of such township? By no
means. It is a justice of the peace and by an order in
writing: "when and so often as any poor person belonging
to any city, town corporate, township or precinct within this
colony, shall apply for relief to any overseer or overseers of
such place where he or she may reside, the said overseer or
overseers shall make application to a justice of the peace of
any such city or town corporate, or to a justice of the county
to which any such township or precinct shall belong, which
said justice and the overseer or overseers shall inquire into

the state and circumstances of such person so applying as aforesaid, and if it shall appear to said justice that such person is in such poor circumstances as to deserve relief then the said justice shall give an order in writing to the said overseer or overseers to make such allowance weekly or otherwise to every such poor person as they in their discretion shall think his or her necessities may or shall require." *Rev. Laws,* 40, *sec.* 11. And in the 12th section, it is declared that "no person or persons shall receive relief from the overseer or overseers of the poor without such order procured as aforesaid, and in case any overseer shall relieve any such poor person without such order no allowance shall be made to him for the same in passing his account." The overseer then is not only not bound, but is expressly forbidden, to provide for, keep or maintain a poor person without order, of the propriety of which the justice, not he, is to judge. And the farmer of the poor under an agreement like the present, coming into the place of the overseer and to provide for those whom he should maintain, is not required to notice the claim of any person, even supported by the requisition of an overseer, unless sanctioned by legal authority.

It is contended that as Sayres stipulated by his agreement to provide for the poor of the township, the only question to be examined was whether J. M. was one of the poor, and to that alone, therefore proof from the plaintiffs could be required. The argument wears an imposing appearance. But it is fully answered by this consideration. The poor of the township, the persons in such poor circumstances as to require relief, the persons whom the agents of the township are permitted to relieve, are to be first ascertained by the adjudication and order of a justice.

It is farther insisted that the necessity of an order in this case is dispensed with, because J. M. having gone into Newark, was there sick and unable to remove, and notice of her condition was given to the overseers of Springfield, who

14

paid, as by law required, the monies expended for her, and which they seek to recover. It is not stated in the case furnished the Court, that such notice was given, but it was admitted on the argument, and the fact will therefore be assumed. These circumstances do not, in my opinion, impose any liability on Sayres. They are *res inter alios acta*, in which he bore no part and over which he had no control. Before she went to Newark, the overseers had called on him and were distinctly warned, that without the order directed by law he would not provide for her. Suffering her to wander out of the township and there fall into a situation forming a claim on humanity, cannot enhance or strengthen their claims on him. When informed by the notice of her condition, they might have applied to a justice and obtained an order if she were in such poor circumstances as to deserve relief. If they have omitted the measures necessary to render Sayres responsible they cannot urge surprise or want of warning.

The custom of the township of S., mentioned in the state of the case, for the overseers to take care of paupers without orders, although by law expressly forbidden, and to keep no "poor's book" although plainly and peremptorily required, cannot seriously be urged as paramount to the provisions of an act of the legislature, or as having a *non obstante* or dispensing power. It is a custom "more honored in the breach than in the observance." *Malus usus est abolendus.*

For the failure to produce an order in evidence, I am of opinion the judgment ought to be reversed.

FORD delivered his opinion, concurring with the Chief Justice on both grounds of reversal.

ROSSELL concurred in the reversal on the first ground mentioned by the Chief Justice. But remarked that he had not taken precisely the same view of the second ground as the other justices.

Judgment reversed.