Loder v. Allen.

ALFRED LODER

*v.*

FRANK B. ALLEN and ANNA S., his wife.

A having a pecuniary demand against B procured him to make a conveyance of land to C to secure it, C giving back to B a defeasance.  A afterwards became largely indebted to C, and C procured from B a conveyance of his

Loder *v.* Allen.

equity of redemption.—*Held,* that neither A nor his assignee could enforce the trust against C without allowing him for the indebtedness which A owed him.

Heard on bill, answers and proofs taken in open court.

The bill is in the nature of a bill to foreclose. It sets out that on the 12th of December, 1890, John F. Coogan was indebted to one English in the sum of $532.50 for money loaned and advanced by English to Coogan for the purpose of paying for certain shares of stock bought for Coogan, and that Coogan, for the purpose of securing that debt, executed and delivered to Allen a deed of conveyance, whereby he conveyed to Allen a certain tract of land situate in Hudson county, describing it, and that Allen, on the same day, gave back to Coogan a paper writing in these words :

"NEWARK, N. J. December 12, 1890.
" I hereby agree to sell and convey to John F. Coogan any time within six months from date in consideration of the sum of $500, with interest to date to be to me paid for such transfer the premises heretofore conveyed by himself and wife to me which premises lie on Everett street, village of Arlington, Hudson County, N. J.
"FRANK B. ALLEN."

The bill further sets out that on the 30th of January, 1891, Coogan conveyed all his right, title and interest in the premises to the wife of Allen, and charges notice to Mrs. Allen of the previous conveyance to her husband.

The bill further charges that on the 30th of January, 1892, English assigned and conveyed to the complainant the debt due from Coogan to him, together with all his right, title and interest in the before-mentioned premises ; alleges that Allen denies that he received the deed in trust for English, or that he holds the title in trust for the complainant ; prays answer without oath, and that Anna S. Allen may be decreed to pay the amount of principal and interest due the complainant, *and that Frank B. Allen may be decreed to hold the premises in trust for the complainant* and be ordered to convey the same to the complainant and his heirs, and for other relief.

Loder *v.* Allen.

Allen and wife answer jointly, and set up that on the 18th of October, 1890, a little less than two months before the conveyance, English asked Allen to endorse his note for $500, and stated to him that Coogan was indebted to him in that amount, and that if he, Allen, would endorse English's note for his accommodation at four months for that amount he would procure Coogan to convey to Allen as security therefor the lots of land in question, and in consideration of that promise Allen endorsed the note of English bearing date October 18th, 1890, payable at four months, for $500; that English procured the note to be discounted for his, English's, accommodation; that at its maturity it was not paid by English, but was duly protested, and that Allen was obliged to pay the same; and that the deed of conveyance from Coogan to Allen was made to him in pursuance of that promise, and thereupon Allen made and executed the defeasance before set forth; that the conveyance was acknowledged by Coogan and his wife before an officer not authorized by the laws to take acknowledgments of deeds, but was duly recorded.

The answer further sets out that in the month of January, 1891, Allen discovered the defect in the acknowledgment, and that English being at that time insolvent, and Allen knowing that he would be obliged to pay the note, applied to Coogan and obtained from him an absolute conveyance of the land to his wife, paying him therefor $100 with his wife's money, and that Coogan conveyed the land to his wife.

The answer further alleges that at the maturity of the note for $500 which he had endorsed for English, Allen paid it with the money of his wife.

At the hearing the proofs showed that Allen endorsed English's note, as set forth in his answer; that English obtained the money on it, and that Allen was obliged to pay it, and did pay it, at maturity; that English was a stockbroker in the city of Newark, who dealt through a house in New York, and took orders from speculators in Newark for the purchase and sale of stocks on the New York stock board; that both Coogan and Allen were dealers with him; that Coogan, in the latter part of November or the early part of December, was indebted to him

in $275; that English pressed him for payment or security, and Coogan, at English's request, conveyed the premises in question to Allen for the expressed consideration of $500; took from Allen the contract to reconvey, above set forth, with the understanding that the conveyance should stand as security, first, for the $275 he already owed English, and that he should have the further credit of $225 for further stock speculations. These speculations he made, and thereby lost the balance of the $500 and $32.50 in addition. English failed on the 5th of January, 1891, and was at that time indebted to Allen for balances due Allen on stock speculations to the amount of about $4,500. Just how long that indebtedness had been accruing did not appear.

With regard to the allegation of the answer, that the conveyance by Coogan to Allen was made to secure the promissory note which he had endorsed for English, the evidence of Allen and English is directly in conflict—Allen swearing positively that the arrangement was as set up in his answer; English swearing that no such thing was mentioned between them at all, and stating that the conveyance was made to Allen at his request, with the object and purpose to put it, as he said, beyond his (English's) temptation to make any improper use of the land so conveyed. The deed from Coogan to Allen was acknowledged before a justice of the peace. In January, 1891, after English's failure, Allen discovered this, and procured a new deed from Coogan to Mrs. Allen, paying him therefor $100. This money, as well as the $500 paid for the note, seems to have been his own funds.

A year after English's failure he made an assignment to the complainant of a long list of assets, consisting of debts due to him, amounting to many thousand dollars, among others the debt due against Coogan for $532.50, and in the assignment was inserted a short conveyance of his right, title and interest in the premises above mentioned.

*Mr. Howard W. Hayes,* for the complainant.

*Mr. William B. Guild,* for the defendant.

PITNEY, V. C.

If Mr. English's account of the transactions is the true one, and there was no understanding that Allen was to hold the conveyance to secure him for endorsing English's note or for what he owed Allen, then the effect of the transaction was, of course, to make Allen a trustee for English; a trust resulted in English's favor, without any declaration in writing.

The present action is one with a double aspect: in the first place, to enforce the trust against Allen; and, in the second place, to foreclose the mortgage. This double aspect must be borne in mind in considering the equities of the parties. There is no allegation that Coogan has any defence to the action, and no defence is made on that score. The defence actually made is aimed at the enforcement of the trust against Allen, and it is two-fold— *first*, that while this transaction was *in fieri* English became indebted to Allen in a sum much larger than that secured by the conveyance in question, and which indebtedness still remains, and hence it would be inequitable for him (English) to enforce that trust; and, *second*, that there was an agreement between English and Allen that this Coogan conveyance should be applied toward that indebtedness.

At the argument it was admitted that complainant took his assignment subject to any equity which existed against it in the hands of English, so that if English could not enforce the trust the complainant could not. The rule on that subject is settled beyond question. *Woodruff* v. *Savings Institution, 7 Stew. Eq. 174* (at *p. 178*), where the authorities in this state are collected. *2 Pom. Eq. Jur. (2d ed.)* § *704.* Professor Pomeroy includes *trusts* in the same category as *debts,* and it would seem plain enough that if the *cestui que trust* has in any manner discharged his trustee, such discharge cannot be avoided by an assignment of his rights by the *cestui que trust,* but that, in the absence of any counter equity, such discharge will avail the trustee against the assignee.

Against the right of Allen, the trustee here, to set up English's indebtedness to him, is invoked what is claimed and appears to be the settled rule in New Jersey, that on the foreclosure of a mort-

gage the owner of the equity cannot set up in defence a counter indebtedness against the holder of the mortgage. In other words, that the mortgagor and obligor cannot offset against his bond and mortgage in the hands of the obligee and mortgagee a debt due to him from the latter.

This rule seems to be settled in this state by the decision of the court of appeals in *Parker* v. *Hartt, 5 Stew. Eq. 844*, affirming the decree of this court made on the advice of Vice-Chancellor Van Fleet, as reported in *5 Stew. Eq. 225*. This rule is peculiar to this state and had its origin in a mere dictum of Chancellor Vroom, unsupported by citation of authority, in *White* v. *Williams, 2 Gr. Ch. 383*, which was reiterated by Chancellor Green in *Dolman* v. *Cook, 1 McCart. 57*. It is to be observed, however, that neither of those cases arose between mortgagor and mortgagee, but between mortgagee and the grantee of the mortgagor by conveyance subject to the mortgage, and in the latter of the cases the complainant agreed to allow the set-off upon terms that it be applied to a certain one of the two mortgages sought to be foreclosed, and it was so done. The rule, however, was applied between mortgagor and mortgagee in *Dudley* v. *Bergen, 8 C. E. Gr. 397*, by Chancellor Runyon, and again in *Parker* v. *Hartt*, as above stated. It is remarkable, as pointed out by counsel for defendant, that an examination of the authorities cited by Chancellor Green in *Dolman* v. *Cook, 1 McCart.*, at *p. 68*, in support of the rule laid down by Chancellor Vroom in *White* v. *Williams*, show that they utterly fail in that respect. See *Pettat* v. *Ellis, 9 Ves. 563*, cited in *3 Pow. Mort. 945a; Troup* v. *Haight, Hopk. Ch. 239* (at *p. 270*); *Rosevelt* v. *The Bank, Hopk. Ch. 579; S. C. on appeal, 9 Cow. 409; Chapman* v. *Robertson, 6 Paige 627* (at *p. 629*); *Holden* v. *Gilbert, 7 Paige 208; Barb. Set-Off 189; Waterm. Sett-Off § 390.* The rule is one not readily learned by the ordinary business man, and is seldom borne in mind by mortgagor and mortgagee in their dealings with each other, with the result, as I think the experience of many counsel will bear witness, that injustice sometimes results from its application. This consideration constrains me to decline to apply it except to cases clearly within its terms.

But the present is not a case of set-off between mortgagor and mortgagee or the assignee of either.   It is a question between a trustee and a *cestui que trust*, and it is this, Will the *cestui que trust*, who is indebted to his trustee, be permitted to call that trustee to account, as such, in this court and compel him to execute a trust, the result of which will be that the trustee must either pay his *cestui que trust* a sum of money or have a lien for the amount fastened upon his property and that property sold to pay it, without allowing his trustee for what he owes him ?   That is the question.   It seems to me that he cannot.   The complainant's claim is one resting entirely in equity.   He has no legal right.   He comes into a court of equity to enforce it and at once subjects himself to the equitable maxim that he who asks equity must do equity.   His suit is, in effect, one to recover money.   He asks defendant to acknowledge that he is mortgagee of the lands in question to the extent of $500 for the benefit of the complainant and that such mortgage be enforced for his benefit.   As defendant is also the equitable owner of the equity of redemption it is tantamount to demanding the money of the defendant.

Now the right of set-off is a favorite in equity and is one source of its jurisdiction which Mr. Spence says (*1 Spenc. Eq. Jur. 651*) was assumed on principles of natural equity.

If two parties have independent money demands against each other, natural justice and equity demands that they should be set off against each other, and I think that equity exists here.   The complainant, standing in English's shoes, comes into this court asking it to enforce an equity which English once had against the defendant.   Fundamental principles of equity compel him to do equity.   No authority is necessary for this proposition, if we look at this as a case of set-off merely.   But the maxim covers the other view of this case, and it was applied to a case much like the present in *Dacres* v. *Crump*, by Lord Keeper Bridgman, as stated by Lord Chancellor Nottingham and reported in *2 Ch. Cas. 87, sub. nom. Bradburne* v. *Amand*.   Lord Dacres employed Crump to purchase land for him and to borrow money with which to pay for it, which Crump did, taking the title in his own name, and also borrowed other moneys for Lord Dacres.   On a bill by

Lord Dacres against Crump, asking for the conveyance to him of the lands so purchased by Crump, upon payment only of the amount borrowed to pay for them, it was held that he must, as a condition, pay all the moneys that Crump had borrowed and advanced for and to him.

Here there was no connection between the purchase of the lands and the loaning of the moneys other than those used to pay for them.

The principle of this case is thus expressed in *Story Eq. Jur.* § *64e:*

" Where a party seeks the benefit of a purchase made for him in the name of a trustee who has paid the purchase-money, but to whom he is indebted for other advances, he shall not be relieved but upon payment of all the money due to the trustees,"

citing *Com. Dig. Chancery, 3 F. 3,* which is based upon *Dacres* v. *Crump.* So in *Baxter* v. *Manning, 1 Vern. 244,* and again in *Shuttleworth* v. *Laycock, 1 Vern. 245,* it was held that if one mortgage his land to secure a loan and afterward the mortgagee loans other money to the mortgagor upon his bond, without any agreement that his mortgage shall stand security therefor, neither the mortgagor nor his heir will be permitted to redeem the land without paying the debt secured by bond as well as that secured by the mortgage, though it would be otherwise if a second mortgagee were asking to redeem. I think, therefore, that the defendant is entitled to succeed on his first ground.

I also think that he must succeed on his second ground, viz., that there was an agreement that the defendant was to hold the land as security for what English owed him.

The parties are in direct conflict in their evidence on this part of the case, but I do not find it necessary to decide between them, since I think that both are, in part, at fault in their recollection of the transaction. I find it difficult to adopt Mr. Allen's account, since at the time he endorsed the note, October 18th, 1890, Coogan does not appear to have been indebted to English in any particular sum of money, and no mention appears to have been made between Coogan and English at that time, or for some

Loder v. Allen.

weeks after, of any conveyance or mortgage. On the other hand, the reason given by English, in his evidence, for desiring Coogan to make the conveyance to Allen instead of himself, is quite unsatisfactory. I think there was some other reason than that stated by English for making the conveyance to Allen. It seems quite probable that, at the date when the deed was first asked for, English was largely indebted to Allen on his books as the result of the stock operations on his account, for on January 5th, four weeks later, he owed him about $4,500, and I think it probable that English felt he was in a critical pecuniary situation and unable to pay Allen if called upon to do so, and that the conveyance was made to Allen to secure him, so far as it would go, not only for the note he had previously endorsed, but for the general account.

A piece of evidence was discovered at the hearing which seems to set this matter entirely at rest. One White was the confidential and managing clerk of English and kept his accounts. He absconded a few days after English failed. Before leaving he placed in Allen's hands for safe keeping some books of account and a roll of manuscript. Allen does not appear to have had any knowledge of their contents, or to have opened them. The books and roll of manuscript were produced at the hearing at the request of complainant, and opened for inspection by English during the giving of his testimony. This roll of manuscript proved to be divers statements of accounts of dealers with English, made up in White's handwriting, and among them was one with " E. M. Bell," in whose name Allen requested his account to be made out. This statement showed English to be indebted to Allen in $4,500, and then credits him with $500 for this conveyance from Coogan to Allen. Allen swore that he had no knowledge of the paper, or that any credit was given for the $500 until it was discovered among the papers produced. He denies that he made any suggestion to Mr. White to give him such credit, and there is nothing in the case to contradict him. The paper seems to be conclusive as to what Mr. White's understanding of the affair was. The proof shows that English, at his failure, contemplated the making of a general assignment for

the benefit of his creditors, and these statements, or some of them, were made up for the purpose of showing who his debtors and creditors were, with the amount due to and from each, and it is impossible to conceive that Mr. White should have given the credit of $500 to E. M. Bell without the direction of somebody in authority in Mr. English's office. I think this is conclusive, and will advise that the complainant's bill be dismissed, with costs.