[Civil No. 3827.   Filed June 29, 1937.]

[69 Pac. (2d) 796.]

THE PHOENIX SAVINGS BANK AND TRUST COMPANY, a Corporation, Administrator of the Estate of ALTIEMOND MONTGOMERY WARD, Also Known as ARTHUR MONTGOMERY WARD, Also Known as AL MONTGOMERY WARD, Deceased, Appellant, v. PEGGY ELLIS and EUGENE G. ELLIS, Appellees.

Miss Alice M. Birdsall, and Mr. Herman Lewkowitz, for Appellant.

Mr. E. O. Phlegar, and Mr. Russell A. Johnson, for Appellees.

LOCKWOOD, J.—This an appeal from an order of the superior court, to the effect that counts I, II, and III of defendant's amended counterclaim should be stricken from defendant's third amended answer and amended counterclaim, and denying the right to amend them.

The question involved in the appeal is one of law alone, and the facts necessary for its determination may be stated as follows. Altiemond Montgomery Ward, hereinafter called decedent, a resident of California, died intestate in that state on or about the 28th day of October, 1933, leaving a substantial estate in both California and Arizona. On the 30th day of March, 1934, letters of administration of the estate of decedent were issued by the superior court of Los Angeles County, California, to Mary C. Ward. Thereafter, and on the 9th of February, 1935, the superior court of Maricopa county issued letters of administration of said estate to the Phoenix Savings Bank & Trust Company, a corporation, hereinafter called defendant. On November 7, 1935, Peggy Ellis, hereinafter called plaintiff, and Eugene G. Ellis commenced this action in the superior court of Maricopa county, alleging, in substance, that plaintiff had acted as practical nurse, housekeeper, and attendant for decedent in California during a period of twenty-three months, for which he agreed to pay her the reasonable value of such services, amounting to a total sum of $1,725, and that on the 5th day of September, 1935, she had filed with the administrator a claim for such amount which the latter had failed either to approve or reject, and therefore she brought this suit. The defendant answered, admitting the presentation of the claim, but denying both specifically and generally all of the other allegations of the complaint regarding the services. It then set up a counterclaim containing some seven items, only three of which need be considered in the present action. These items were $1,150 for board of plaintiff and her children, and $153 for money expended by decedent at the request of plaintiff and for her benefit. From there on matters proceeded with various motions, demurrers, and amended pleadings of many natures until a third amended

answer and counterclaim was filed on May 25, 1936. The only allegation of the counterclaim which we need consider is that contained in paragraph VI, which reads as follows:

"That on the 7th day of November, 1935, Mary C. Ward, acting as administratrix of the estate of said Altiemond Montgomery Ward, deceased, under the appointment made by the superior court of Los Angeles County, California, and also individually, for and in consideration of the prosecution of said claims for and on behalf of the estate of said decedent and the heirs at law of said estate by this defendant as administrator aforesaid, made to this defendant as such administrator an oral assignment of all her right, title and interest as administratrix of said estate under letters issued to her by the superior court of Los Angeles County, California; and also as an heir at law of said estate in and to all claims, demands and rights of action accruing against plaintiffs or either of them on account of the matters and things hereinabove set forth, and authorized and directed this defendant to prosecute the cause of action hereinabove set forth against these plaintiffs; that thereafter and in the early part of 1936, the exact date thereof being unknown to this defendant, said Mary C. Ward, acting individually and as administratrix aforesaid, by an instrument in writing, confirmed said oral assignment theretofore made by her; that thereafter and on the 24th day of April, 1936, said Mary C. Ward as administratrix aforesaid of the estate of said Altiemond Montgomery Ward, deceased, in the county of Los Angeles, state of California, made, executed and delivered to this defendant an assignment in writing confirming and ratifying said oral assignment theretofore made by her of the claim hereinabove set forth and described, and duly transferring all rights of action thereon; that thereafter and on the 18th day of May, 1936, an order was duly made and entered by the superior court of Los Angeles County, California, in proceedings pending therein, in the administration of the estate of said Altiemond Montgomery Ward, deceased, ratifying and confirming the assignment of

said claim theretofore made by said Mary C. Ward as administratrix aforesaid, and decreeing this defendant as administrator of the estate of Altiemond Montgomery Ward, deceased, in Maricopa County, Arizona to be entitled to the distribution of the claims so assigned;''

Plaintiff thereupon moved to strike the counterclaims, assigning the following reason:

'' . . . that it affirmatively appears from the allegations of said counts, and each of them, that the said defendant was not the owner of the claims set forth in said counts, nor any of them; nor did said claims exist in favor of said defendant at the date of the institution of this suit.''

The same point was raised by demurrer. The court thereupon made the following order:

''It is ordered by the court that the motion of plaintiffs to strike from defendant's third amended answer and amended counterclaim, Counts I, II and III of defendant's said amended counterclaim is hereby granted, and said Counts I, II and III of said amended counterclaim are hereby ordered stricken from defendant's third amended answer and amended counterclaim, and said defendant is denied the right to amend said Counts I, II and III thereof,''

which was the order from which this appeal was taken.

There is, in effect, but one question before us, and that is whether it appears on the face of the counterclaims that they were not claims of the class permitted by our statutes to be pleaded as counterclaims in this action. The situation is governed by section 3785, Revised Code of 1928, which reads as follows:

''*Filing of counterclaim not admission; subject of counterclaim.* The pleading of a counterclaim is not an admission of the cause of action alleged in the complaint. The counterclaim must be an existing one in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action,

and must be: A cause of action arising out of the contract or transaction pleaded in the complaint, or connected with the subject of the action; or, in an action arising on a contract, another cause of action arising also on a contract, and existing when the action was begun.''

The precise portion of the statute which plaintiff urges the counterclaims did not comply with is as follows:

''The counterclaim must be an existing one in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must be: * * * ''

The argument of plaintiff may be summarized as follows: In the present case decedent left estate in both California and Arizona. California was the state of his domicile and, therefore, of principal administration, and letters of administration were duly granted to Mary C. Ward in that state. The administration in Arizona was ancillary only, letters of administration there being granted to the Phoenix Savings Bank & Trust Company defendant herein. Since the counterclaims set up were claims of a personal indebtedness from plaintiff to decedent, arising during the lifetime of the latter, they followed the principal administration and not the ancillary, and could be enforced only by the principal administratrix, unless she legally transferred such claims to another person. This could be done by order and approval of the California court. Since it appears affirmatively from the third amended counterclaim that while this action was commenced on the 7th of November, 1935, the California court did not approve of such transfer until the 18th of May, 1936, the defendant herein had no cause of action on the counterclaims against the plaintiff until some six months after this action was commenced, and, there-

fore, could not properly plead the items referred to as counterclaims.

Defendant's position, after omitting various matters which are not controverted by plaintiff, in substance is two-fold: (a) That counterclaim should be construed liberally in favor of a defendant to prevent a multiplicity of actions; and (b) that the allegations of the complaint show that the causes of action on the counterclaims were in the Arizona administrator at the time the action was brought. So far as the second contention is concerned, we think it is not well founded. The allegations of the third amended answer and counterclaims which are, of course, the only ones we can consider as to the date of the alleged assignment of the counterclaims, are that on the 7th day of November there was an oral assignment of the counterclaims made by the California administratrix to defendant; that in the early part of 1936 she confirmed the oral assignment by a written assignment; that in April, 1936, she made another formal written assignment, and that in May, 1936, the superior court of Los Angeles county confirmed the last assignment. We are satisfied that this shows affirmatively that when this action was filed in the superior court of Maricopa county, the California administratrix had not made a valid assignment of the counterclaims to the defendant herein.

The next and the real question involved is whether, within the meaning of our statute, a cause of action existed in favor of the defendant on the counterclaims at the time this action was begun. There is no doubt that if the statute is to be construed literally, plaintiff is right in her contention that the counterclaims should be stricken. The legal defendant was the Phoenix Savings Bank & Trust Company, being such by reason of the fact that it had been appointed administrator of the estate of decedent by

the Arizona court. The legal owner of the cause of action set up in the three counterclaims, after the death of decedent, was either his heirs or the principal administratrix in the state of California. No citations are necessary to support this statement of the law. There was no privity between the California administratrix and the Arizona administrator. *Arizona Cattle Co. v. Huber,* 4 Ariz. 69, 33 Pac. 555. Such being the case, although the counterclaims constituted causes of action arising out of contract and existing when the action was begun, those causes of action were not then in favor of the legal defendant. On analyzing the rule invoked by plaintiff and the reason therefor, it appears to us there is one aspect of the situation which has been overlooked. The reason back of the statute requiring that a counterclaim pleaded by a defendant must exist *in his favor* at the time the suit is commenced against him is well set forth in the case of *Shannon v. Wilson,* 19 Ind. 112, as follows:

"If a defendant, at the commencement of a suit, has a set-off against the plaintiff which will mature before the time of trial, the plaintiff ought to liquidate the amount of that set-off upon his claim before he sues. The policy of the law should be to avoid multiplicity of suits. But there is great justice in limiting this right of set-off to claims held by the defendant at the commencement of the suit, because it would work a hardship upon the plaintiff to be compelled, on the trial, to allow a set-off procured afterward, *of which he must, necessarily, have been ignorant, and in no wrong for not crediting upon his account before suit, and which might defeat a suit justly commenced, whereby he would be mulct in costs.*" (Italics ours.)

If, for example, A brings suit against B on a contract, it is obviously unfair that B should be permitted thereafter to go out and buy a cause of action which C might have had against A, even though it is also on contract, and plead it as a counterclaim when A

obviously had and could have no knowledge that his debt to C was to be used against him, and thus perhaps, as was said in the Indiana case, defeat A.'s action and cause him to be mulcted in costs. But this situation does not and cannot exist when the legal defendant or plaintiff, as the case may be, is merely acting in a representative capacity. In the present case, the causes of action, both as set forth in the complaint and the counterclaims, originally arose between decedent and plaintiff and were fully accrued before his death. Were he alive, he could undoubtedly plead the counterclaim in an action brought against him by plaintiff, no matter in what jurisdiction it was brought. If plaintiff recovers in the present action, she will collect her judgment from the estate of the decedent, and not from the administrator personally. She knew at the time she brought her action that such would be the case, and she also knew that if the counterclaims were in truth valid ones that it was the estate of the decedent which would ultimately secure the benefit of a judgment thereon, whether through an action by the Arizona administrator or the California administratrix. She could not possibly have been unjustly surprised and injured by finding that a claim which was due originally to the decedent might rightfully be set-off against a claim against him which she was attempting to enforce against his estate.

As was said by defendant, and very correctly, statutes in regard to the pleading of counterclaims are liberally construed in order to prevent a multiplicity of actions and to see that all of the transactions between parties are, if possible, settled in one action. Plaintiff's action is, in substance, an effort to recover from the estate of the decedent a debt incurred by him in his lifetime. If she has the right to maintain such claim against his estate, we do not see why justice does not require that the estate should be permitted

to set-off an indebtedness from her to decedent which enures to the benefit of the estate, in the same procedure.

Many cases have been cited by plaintiff holding that defendant may not buy a claim from a stranger and use it as a counterclaim after a suit has been started against him. We have no quarrel with these cases, but so far as we have been able to discover none of them involve a situation where the real attempt in the plaintiff's action was to charge the estate of a beneficiary on a contract with him, and the court refused to allow a claim in favor of the beneficiary and against the plaintiff to be set-off, merely because the legal title to that claim happened to be in the name of some other trustee of the same estate. While the action is not an equitable one, we think the principles of equity should be considered in construing the statute, and we, therefore, hold that the "defendant" and "plaintiff" referred to in section 3785, *supra,* includes both *cestui qui trustents* and their trustees. Such being the case, since it appears clearly that the equitable title to the counterclaims pleaded was in the estate of decedent, we think the mere fact that they were legally in the name of one trustee, while certain assets of the estate, which plaintiff seeks to charge with her claim, were in the name of another trustee of the same estate, should not be construed as barring the right to plead them in this action.

The order of the superior court of Maricopa county is reversed, and the case remanded, with instructions to proceed with the action in accordance with the principles set forth herein.

McALISTER, C. J., and ROSS, J., concur.