ANNA BASKERVILLE, PLAINTIFF, v. PHILIP KOFSKY, DEFENDANT.

Decided May 31, 1940.

For the plaintiff, *Kalisch & Kalisch* (*Harry Kalisch*).

For the defendant, *Morris Wurgaft*.

HARTSHORNE, J.   Two young men on a party with their girls set out in their car one evening, Kofsky, the present defendant, driving.   On reaching an intersection near the Essex county court house in Newark, they sought to beat the red light, and in doing so, on reaching the far side of the intersection, struck an old colored woman who had just stepped off the curb.   Their car careened some distance up the street, stopping head-on into a pole, leaving the woman lying on the street, with both legs broken, the bones smashed and protruding through the flesh.   Her injuries were so serious that she was confined to the hospital for a year and a half at first, then had to return for further treatment for another six months and will be barely able to walk the rest of her life.   So far, unfortunately, the circumstances are not unusual.

The unusual further facts, giving rise to the present proceedings, are as follows: As soon as the car stopped against the pole, and before any police or outsiders arrived, the present defendant, Kofsky, said to his friend, Kalba, in substance, according to the evidence, "You lie me out of this, and I'll take care of you." Doubtless because Kalba was an employe of Kofsky's father, the passenger, Kalba, agreed to help perpetrate this false scheme. Accordingly, when the police arrived on the scene, Kalba, the passenger, showed them his driver's license and said he was the driver. He later repeated this at police headquarters, Kofsky, the real driver, the present defendant, standing by silently the while on both occasions.

Since the accident happened in the evening, there were none to question this falsehood, and suit was accordingly instituted in due course against Kalba, the supposed driver. Due to the exceptionally serious character of the injuries, the trial did not occur till after the expiration of two years from the date of the accident.

Since the bar of the statute had then apparently run against suing him, the real driver, Kofsky, the present defendant, in pursuance of his fraudulent agreement with Kalba to "take care of you [Kalba]," then came to court, and blandly corroborated Kalba's testimony as to the fact that Kalba had not been the driver, and as to the fraudulent scheme they had originally concocted, and now apparently successfully perpetrated, both on the authorities and the injured woman. But cross-examination of Kofsky at this trial developed that he had left the state shortly after the occurrence of this accident, had never returned, and was now a resident of New York. Accordingly, and in order to prevent the effectuation of this conspiracy to obstruct justice (*N. J. S. A.* 2:24-7), so readily and purposefully admitted by both parties, plaintiff's counsel, with the aid and consent of the trial court, served the summons in the present action against the real driver, Kofsky, at the conclusion of his testimony in the first suit, in the court room and shortly after court had recessed for the day. The suit against Kalba naturally terminated in finding him, the passenger, free of negligence toward the

injured party. Such are the circumstances under which the present defendant, Kofsky, the true driver, now asks this court to set aside the service upon him of the summons by the injured woman in the present action for the same accident as in the first suit, instituted because of his deceit.

Substantially, the present defendant, who has conspired with his passenger to defeat justice and defraud the injured public, now asks this court of justice to become an accessory to this conspiracy. Fortunately for the law itself, a careful consideration of the cases shows such a contention to be as foreign to the law, as it is to common sense.

The privilege of the exemption of parties and witnesses from service of process, while going to, attending, or coming from, court, stems from the common law, its basic purpose being that for which courts themselves are established, *i. e.*, to achieve justice. A host of authorities, not only in this state, but in the United States at large, and in England from the earliest times, establish this general purpose of the privilege. Furthermore they show that when this purpose is absent, and the individual seeking the privilege is not acting in good faith, but collusively, so that the court's extension of such privilege will achieve, not justice, but injustice, this peculiar privilege will not be granted.

The grant of this privilege is "a rule of public policy * * * in support of the unrestricted operation of our courts and the proper disposition of cases before them. * * * [It is] a practical rule of public policy directed to facilitating the administration of justice in our courts." *Michaelson* v. *Goldfarb*, 94 *N. J. L.* 352; 110 *Atl. Rep.* 710. "The immunity extends to every person who *in good faith* attends as a witness." *Mulhearn* v. *Press Publishing Co.*, 53 *N. J. L.* 153; 21 *Atl. Rep.* 186. See accord, *Dungan* ads. *Miller*, 37 *N. J. L.* 183. So where the party seeking such immunity "has attempted to abscond from her residence and conceal herself and the children—and has committed two matrimonial offenses against him [her husband] and seeks to deprive him of any and all opportunity to have any redress in any court," our courts have held that "the rule which she seeks to invoke

was certainly never intended for the benefit of any such person." *Brown* v. *Brown,* 112 *N. J. Eq.* 600; 165 *Atl. Rep.* 643.

Such has been the established common law rule in England from the earliest times. Even as to the more stringent process of arrest, the court is equally bound to protect the privilege, and "to take care that the privilege against arrest is not abused or carried so far as, instead of furthering the administration of justice, to enable a party to defy justice." *Ex parte Cobbett,* 119 *Eng. Rep.* 1502; 7 *E. & B.* 955. "But here there was a manifest intention on the part of Davis *to impose upon the court,* and on that account he was not to be permitted to avail himself of the exemption." *Meekins* v. *Smith,* 126 *Eng. Rep.* 363; 1 *H. Blackstone* 636. "The only question then to be considered is whether in such case the witness comes *bona fide* or collusively." *Walpole* v. *Alexander,* 99 *Eng. Rep.* 530, *Tidd's Practice* (*8th ed.*) 198. See to the same effect *Anonymous,* 88 *Eng. Rep.* 906; 11 *Modern* 79. *Selby* v. *Hills,* 131 *Eng. Rep.* 364; 8 *Bingham* 166.

Turning to the other jurisdictions in this country, we find numerous authorities gathered in an illuminating note to 19 *A. L. R.* 828, showing a series of classes of cases where the courts have refused to grant the privilege requested. These include cases where (1) "a full and complete adjustment of the rights of the parties cannot be had in the first action, and where full relief would be denied" were the second proceedings to be nullified; (2) where a tort has been committed by the person seeking the privilege while in attendance at the first proceedings; (3) where a crime has been similarly committed by him; (4) where the privilege would "enable him to escape all liability for his wrongdoing" (*Mullen* v. *Sanborn,* 29 *Atl. Rep.* 522 (*Md.*)); and (5) where the parties themselves give cause by their acts for the institution of the second proceedings against them. *Nichols* v. *Horton,* 14 *Fed. Rep.* 327. See, also, *Lamb* v. *Schmitt,* 285 *U. S.* 222; *Long* v. *Ansell,* 293 *Id.* 76; *Central Farmers Trust* v. *Rorick,* 57 *Fed. Rep.* (*2d*) 664; *Liberty Morocco Co.* v. *Roth,* 119 *Atl. Rep.* 312 (*Del.*).

Finally, this restriction in the grant of this privilege would seem, impliedly at least, to have been approved by our legis-

lature. For the privilege of immunity from arrest, as distinguished from the lesser privilege of immunity from the service of summons, both of which were originally recognized at common law in this state, has alone been made absolute, and free from the above exceptions, by statute. *N. J. S. A.* 2 :97-18-24-25. *Expressio unius est exclusio alterius.*

That the present defendant deserves no clement consideration, on his own part, is clear. He has defrauded both the authorities and the injured member of the public, and has violated the penal provisions of the statute. *N. J. S. A.* 39 :4-129. His action was clearly a collusive attempt with that of his passenger, the previous defendant, Kalba, to defeat justice. To ask a court to aid the perpetration of a conspiracy to defeat justice, but evidences the applicant's own utter disregard for law and the rights of others.

Since the other grounds originally urged have been abandoned, they will not be considered, and the motion to set aside the service of the summons will accordingly be denied.

Judges Flannagan, Van Riper and Brennan concur.