30 N.J. Super. 225 (1954)
104 A.2d 81
LEO ERTAG, PLAINTIFF,
v.
BERNARD S. HAINES, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 24, 1954.
*226 Mr. Benjamin Shanefield, attorney for plaintiff.
Mr. Jack L. Cohen, attorney for defendants.
GAULKIN, J.C.C.
Plaintiff sues on a book account, assigned to him by Synvar Corporation, a Delaware corporation, for goods sold and delivered by Synvar Corporation to defendants in Monmouth County between January and September 1953.
Defendants admit the receipt of the goods, and the prices, but allege that the goods did not correspond to the samples in accordance with which they were sold; that deliveries were not in the amounts nor at the times agreed upon, and that consequently defendants suffered damage in excess of the plaintiff's claim.
Defendants concede that they may not counterclaim for the excess against the assignee. Pargman v. Maguth, 2 N.J. Super. 33, 38 (App. Div. 1949).
Consequently, they move "for an order dismissing the complaint filed herein on the ground that the plaintiff, Leo Ertag, is not in fact an assignee, but is the nominee, or agent, of his alleged assignor, for the purpose of bringing this suit and thereby permitting his alleged assignor to evade the statutes and rules of the Court with respect to non-resident *227 plaintiffs, and for the purpose of foreclosing the defendants from asserting a counterclaim which in fact and law the said defendants are entitled to assert as against the real party in interest in this action."
At the argument the attorney for the assignee frankly admitted that the assignee shares offices with him, paid nothing for the assignment, has no interest in the claim or the outcome of the litigation, and is the mere holder of the naked title to the claim as Synvar's nominee. The assignee's attorney said the assignment was made because defendants reside in Monmouth County, and the attorney wanted to sue in this county for his personal convenience. However, when defendants offered to waive any question of venue if Synvar were joined or substituted as a party plaintiff, the offer was declined. In fact, the assignee's attorney at first contended that (because of the peculiar wording of the complaint) defendants could not assert any recoupment for any damages except such as arose from only two of the 12 shipments, but he finally stipulated that defendants could prove, by way of recoupment, damages up to, but not exceeding, the amount of the assigned claim.
Defendants argue this is unjust. They say, and the assignee admits, that the claim, the defense and the counterclaim all arise out of the same transaction  the supplying by Synvar of plastic molding compound to defendants to be molded by defendants into buttons. The plaintiff admits that when the case comes to trial the officers and employees of Synvar will have to be here to testify, and if the assignee is then present at all, it will only be as a mildly curious bystander. The issues and the proof will be the same as if Synvar itself sued, except that defendants will not be able to recover any excess they may prove to be due them over and above the assigned claim. In fact, to protect defendants' right to sue for the excess in Delaware, the court here may have to ask the jury to bring in a special verdict. As to such excess, defendants will have to start a separate suit in Delaware, and perhaps try the whole case all over again, provided there is nothing in the Delaware law that will block defendants *228 because of the proceedings in New Jersey. A resident of New Jersey could not so unjustly advantage himself over us, say defendants, so why should a non-resident be permitted to do so? Cf. Carey v. Brown, 92 N.J. Eq. 497 (Ch. 1921); Maplewood Bank & Trust Co. v. Carragher Constr. Co., 12 N.J. Misc. 227 (Sup. Ct. 1934).
Such a result is, of course, completely contrary to the spirit of our rules. A fundamental aim of our practice is to dispose of all controversies between the same parties in a single action, as speedily as is consistent with justice. Multiplicity of suits is today as abhorrent to the courts as it always has been to the litigants. Galler v. Slurzberg, 22 N.J. Super. 477, 483 (App. Div. 1952), certification denied 11 N.J. 582 (1952).
The assignee's attorney insists Synvar is within its legal rights in making the assignment, and the assignee in suing upon it, and firmly states that this court has no power to prevent it. R.R. 4:30-1, says he, provides that "Every action may be prosecuted in the name of the real party in interest * * *." This was formerly Rule 3:17-1, which originally read "Every action shall be prosecuted," etc. On November 10, 1949 the rule was amended to change "shall" to "may"  a clear indication, says plaintiff, that the option lies with the litigant and not with the court. Furthermore an assignee (at least one for value) is a "real party in interest." Zurcher v. Modern Plastic Machinery Corp., 24 N.J. Super. 158, 163 (App. Div. 1952), affirmed (memo) 12 N.J. 465 (1953).
Defendants in their brief "frankly concede that there is no explicit grant of power or authority in the rules" to the court to grant that "which the defendant on this motion requests," but they urge that "to deny defendants' motion is to admit that this court is operating in a vacuum where a wrong is without a remedy. This is contrary to the axiomatic equitable powers of the court to provide a remedy for every wrong."
Defendants admit there is no New Jersey case to support their motion to dismiss the complaint, but they cite, *229 as "the only two decisions which counsel has been able to uncover at all touching upon this situation," Fricke v. W.E. Fuetterer Battery and Supplies Co., 220 Mo. App. 623, 288 S.W. 1000 (Mo. Ct. App. 1926) and Phoenix Savings Bank and Trust Co. v. Ellis, 50 Ariz. 116, 69 P.2d 796 (Ariz. Sup. Ct. 1937). However the Fricke case merely held that in an assignee's action, an unliquidated counterclaim existing against the assignor may be set up, "but only to defeat recovery." In the Phoenix case it was the counterclaim that had been stricken out, in a suit by a plaintiff against an ancillary administrator, on the ground that the counterclaim belonged to the principal administrator. The court reversed, holding that for the purposes of the administration of the estate, the ancillary administrator should be permitted to counterclaim. Neither case authorizes the striking of an assignee's complaint in a case such as this. It seems to me that the complaint may not be stricken.
Is the court then helpless to avoid the result complained of by defendants, so inconsistent with the spirit of the rules? If it can properly be avoided, it should be. "It is the duty of all judges to see that these salutary objectives [of the rules] are not perverted." Milk Drivers and Dairy Employees, etc. v. Shore Dairies Inc., 8 N.J. 32, 39 (1951).
Courts have inherent power to control their own suitors, and to prevent abuse of their process. Kristeller v. First National Bank, 119 N.J.L. 570, 572 (E. & A. 1937); Seaman v. Mann, 114 N.J. Eq. 408, 409 (Ch. 1933); Margarum v. Moon, 63 N.J. Eq. 586 (Ch. 1902); Standard Roller Bearing Co. v. Crucible Steel Co., 71 N.J. Eq. 61 (Ch. 1906); Bigelow v. Old Dominion Copper Mining & Smelting Co., 74 N.J. Eq. 457, 473, 480-485 (Ch. 1908); Von Bernuth v. Von Bernuth, 76 N.J. Eq. 177, 183 (Ch. 1909); 21 C.J.S., Courts, § 31, p. 41; 21 C.J.S., Courts, § 88, p. 138.
In Bigelow v. Old Dominion Copper Co., supra, Chancellor Pitney said (page 473):
"The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain *230 them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be. The court of equity thus appealed to acts in personam, and it is immaterial whether the threatened inequitable conduct is to be carried on within or without the limits of the jurisdiction. 1 High on Injunc. § 103; Story's Eq. Jur. (12th Ed.) §§ 899, 900; Margarum v. Moon, 63 N.J. Eq. [18 Dick.] 586, and cases cited."
In New Jersey the courts may even decline jurisdiction altogether under the doctrine of forum non conveniens, upon "considerations of convenience and essential justice." James H. Rhodes & Co. v. Chausovsky, 137 N.J.L. 459, 462 (Sup. Ct. 1948).
One of the ancient examples of the exercise of this inherent power was the equitable set-off. Recoupment had been fashioned by the common law without the aid of statutes, but set-off at law was a creature of statute. The first statute was New Jersey's, and that was not passed until 1722, six years before the English statute, 2 Geo. 2, c. 22. Stryker v. Little, 8 N.J.L. 209, 212 (Sup. Ct. 1825). In the meantime, since justice demanded it, equity had developed the equitable set-off. Indeed it was "a favorite in equity, and is one source of its jurisdiction which Mr. Spence says was assumed on principles of natural equity." Loder v. Allen, 50 N.J. Eq. 631, 637 (Ch. 1892); Scarano v. Scarano, 132 N.J. Eq. 362 (Ch. 1942); Camden National Bank v. Green, 45 N.J. Eq. 546, 551 (Ch. 1889), affirmed on opinion below, Green v. Camden National Bank, 46 N.J. Eq. 607 (E. & A. 1890); 34 Harv. L.R. 178, 179.
Since recoupment, and set-off at law, were sharply circumscribed by technicalities, equity still stepped in even after the adoption of the statutes permitting set-off at law, when a special equity existed beyond the reach of the law courts. Scarano v. Scarano, supra; Camden National Bank v. Green, supra; Seaman v. Mann, supra.
The non-residence of the plaintiff was often such an equity. For example, though at law an unliquidated demand could *231 not be asserted as a set-off, equity often compelled the non-resident plaintiff to permit it. Note 30 L.R.A. (N.S.) 21 and cases cited: Ewing-Merkel Electric Company v. Lewisville Light & Water Co., 92 Ark. 594, 124 S.W. 509, 30 L.R.A., N.S., 21 (Sup. Ct. 1909); Arcadia Knitting Mills v. Elliott Mfg. Co., 195 A. 681 (N.H. Sup. Ct. 1937); Jackson v. Bell, 31 N.J. Eq. 554, 557 (Ch. 1879), affirmed 32 N.J. Eq. 411 (memo) (E. & A. 1880). Cf. Rommel v. Mass, 32 A. 127 (N.J. Ch. 1895).
In Ewing-Merkel Electric Co. v. Lewisville Light & Water Co., supra [92 Ark. 594, 124 S.W. 510], the Court of Chancery compelled the non-resident plaintiff to allow a set-off not ordinarily allowable, simply because of plaintiff's non-residence. The language of the court is pertinent:
"`It is certainly unconscientious for an insolvent party to coerce the payment of his claim when he is owing the other party an equal or larger sum, and thus leave the latter remediless, nor should a nonresident be allowed, under like circumstances, to enforce through the agency of the courts the collection of his debt, and compel the other party to seek a foreign jurisdiction for relief, and then perhaps find the debtor insolvent. If the object of litigation be the attainment of justice, assuredly such results should be prevented. Indeed, the doctrine of equitable set-off to the extent it was formerly applied was based upon moral justice, and to meet such cases as the above, thus preventing wrong. It was then not uncommon to stay an insolvent or nonresident debtor in the collection of his claim until damages to which the complainant might be entitled to against him were liquidated under the order of the chancellor, and then apply them in satisfaction of his independent debt.'
In Quick v. Lemon, 105 Ill. 578, it is said: `It would seem to be inequitable to require the corporation to go to another state to collect its demand in an action at law, and we are inclined to hold that the nonresidence of the complainant in connection with the fact that he calls upon a court of equity to enforce his judgment is sufficient to allow the defendant corporation to prove and set off its demand set up in the cross bill against the judgment of the complainant.' * * *
The rule announced in these cases is a just rule, and should be enforced. We see no good reason for sending a citizen of this state to a foreign jurisdiction to obtain justice when the courts of this state can afford relief. They are as fully competent to afford relief to the citizen as to the nonresident. Why should one in cases like this be accorded greater rights than the other?"
*232 In Arcadia Knitting Mills, Inc. v. Elliott Mfg. Co., supra [89 N.H. 188, 195 A. 682], the court said:
"The equitable ground for the allowance in such case of a set-off not authorized by statute is the hardship the defendant would undergo by being compelled to pursue his remedy in a foreign jurisdiction. 24 R.C.L. 807, citing 19 Ann. Cas. 1042, note."
Before the adoption of our new rules, even recoupment, plus legal set-off, plus equitable set-off, plus the counterclaim allowed under our statutes and practice prior to 1948 (Falkenstern v. Herman Kussy Co., 137 N.J.L. 200, 205 (E. & A. 1948)), still left much to be desired. As Judge Jayne cried, in Scarano v. Scarano, supra, at page 370:
"Why, in all cases of mutual debts, courts of equity should not have at once supported and embraced the doctrine of the universal right of set-off where practicable to do so, is difficult to comprehend. Its universal adoption in all systems of jurisprudence which derive origin from Roman fountains demonstrates its justice and policy. It is in perfect harmony with the principles by which the decrees of this court are normally governed."
To close these gaps and remedy these defects, and to make the counterclaim as broad, all-inclusive and liberal as the merger of law and equity had made possible, R.R. 4:13 (counterclaim and cross-claim) was adopted to complement R.R. 4:31 (joinder of claims and remedies) and R.R. 4:32-4:33 (joinder of parties). These rules, as Judge Bigelow pointed out in Galler v. Slurzberg, supra, at page 483, are the culmination of the idea which:
"In the course of the years * * * has developed of joining all controversies between the same parties in a single action, where that course can conveniently be adopted, without producing a record so complicated as to impede justice. Rule 3:18 permits an unlimited joinder of claims, or causes of action, in an action by a single plaintiff against a single defendant. For example, action on a note and a suit for personal injuries arising from negligence may be joined in one action, although the court, in its discretion, may order a severance. When there are several defendants and all are proper parties to each claim, claims may be joined as freely as if there were only one defendant. We have had a similar *233 broadening of the scope of counterclaims. A defendant may file a counterclaim that is entirely unrelated to the original complaint. Rule 3:13-1. Our rule as to cross-claims by one defendant against another, is even broader than the corresponding federal rule. Any cross-claim may be asserted. Rule 3:13-6. Moore's Federal Practice, §§ 18.04, 13.18 and 13.32."
It must be remembered that at common law the assignee could not sue in his own name at all, and even when he was an assignee for value he usually had to sue in the name of the assignor. Elsberg v. Honeck, 76 N.J.L. 181, 184 (Sup. Ct. 1908). The law was liberalized to permit the assignee to sue in his own name, to benefit the assignor and assignee in bona fide transactions. Certainly this liberalization was intended as a step forward, not backward, and was not intended to put it within the power of an assignor to prejudice the defendant. On the other hand, not only was set-off a favorite of equity and adopted at law in New Jersey before anywhere else in the Anglo-Saxon world, but from earliest times the courts held that "the practice of set-off is wise, salutary and to be favored, saving litigation and expense and avoiding multiplicity of suits * * *" Stryker v. Little, supra, at page 212. Our present rule, relating to counterclaims, was intended to be the ultimate step forward. Are we then to be thwarted in accomplishing complete justice by the simple device of an assignment without consideration? As long ago as 1889, in connection with a related situation, the court said in Camden National Bank v. Green, 45 N.J. Eq. 546, at page 552 (Ch. 1889):
"I think it is well settled that when an estate passes into the hands of an assignee * * * the other party may come into equity, if there be no relief at law."
The non-resident is entitled to equality with the resident, but not superiority. In at least one area, a non-resident does receive special consideration. He is ordinarily immune from process in coming to New Jersey to testify. Yet even that immunity falls when granting it "will achieve, not justice, *234 but injustice." Baskerville v. Kofsky, 18 N.J. Misc. 325 (C. Pl. 1940).
As Judge Alfred C. Clapp pointed out in his article on "Civil Procedure in State Courts," in the 1951 Survey of American Law (N.Y.U.), page 803, the "indefensible doctrine" of the immunity from process of the non-resident suitor "continues to interest the student" and appears to be breaking down, citing among other authorities 26 Ind. L.J. 459; Vaughan v. Womeldorf, 366 Pa. 262, 77 A.2d 424 (Sup. Ct. 1951); State ex rel. Ivey v. Circuit Court, 51 So.2d 792 (Fla. Sup. Ct. 1951).
"When a non-resident approaches a court asking the enforcement of a right, it would seem to be an affront to that court's dignity to say it has no jurisdiction to enforce a liability against him. Once he invokes the jurisdiction of a court in order to sue, it is illogical to hold that he may not be sued within the same jurisdiction." 26 Ind. L.J. 464, note. 39.
"When the non-resident's own interests cause him to enter the jurisdiction in order to bring suit, it seems absurd to offer special favors to induce him to stay and prosecute his case to completion." Ibid. p. 461.
As the courts are given more and finer and larger tools with which to accomplish expeditious justice, there is also given to the courts by necessary implication the power to wield those tools to accomplish fully the job for which they were designed. In a situation such as this, the court has, and probably always had, the right to enjoin the further prosecution of the action by the assignee until the assignor joins or is substituted as a party plaintiff.
An order to that effect may be presented.