740  NEW JERSEY MISCELLANEOUS REPORTS.

Supreme Ct.—Noah MacDowell & Co. v. Edward & John Burke, Ltd.

NOAH MacDOWELL & COMPANY, PLAINTIFF, v. EDWARD
AND JOHN BURKE, LIMITED, DEFENDANT.

Decided July 27, 1923.

Attachment—General Appearance by the Defendant and Com-
plaint Filed Setting Forth Cause of Action—Motion to Strike
Out Complaint on Ground That, as Filed, It is For Un-
liquidated Damages—Dispute Relates to Failure of General
Distributor of Manufacturer to Take Entire Product as Agreed
Upon—Defendant's Contention Well Founded—Entrance of
General Appearance Should Not Affect His Rights in the
Case as It Has Progressed—Complaint Struck Out Attach-
ment Will Remain.

For the plaintiff, *Geran & Matlack.*

For the defendant, *Pitney, Hardin & Skinner.*

The opinion of the court was delivered by

LLOYD, J.  This is a motion to strike out the complaint,
release the property attached under a writ from the lien of
the attachment, or quash the writ of attachment, on the
ground that the claim set forth by the complaint is unliqui-
dated damages.

The attachment was sued out under the act of 1901 and
based upon the statutory affidavit.  An auditor was ap-
pointed and a report filed by him, but within the time lim-
ited by the statute the defendant entered a general appear-
ance.  Thereafter the plaintiff served its complaint setting
forth the cause of action in the case.

The basis of the motion is that the cause of action as now
filed is for unliquidated damages, and that a writ of attach-
ment for such claim will not issue.  An examination of the
complaint discloses that it is based upon a alleged breach
of written contract entered into between the parties whereby
the defendant became the distributor over the entire world
of certain products manufactured by the plaintiff, and the
plaintiff was to sell to the defendant for cash all of the said

products manufactured by it, or to be manufactured by it, during the lifetime of the contract, or until the 30th of April, 1930; that at the time of the execution of the contract on April 24th, 1919, the plaintiff corporation was manufacturing twelve thousand cases of merchandise per year, and has continued to manufacture its product at that rate ever since; that the defendant has refused to take the entire output of the plaintiff, and as a result the plaintiff has lost the profit which would have accrued to it had it not been for such refusal. The complaint further sets forth that the profit to the plaintiff amounted to one dollar per case; that the defendant corporation has refused to accept twenty thousand cases, and the same are held subject to the order of the defendant.

It seems to me the defendant's contention is well founded. The term "profit" is, in itself, a most elastic one, and depends in a business operation upon many factors. To determine its amount in any given case neither reference to the contract nor to any method of calculation arising out of it, or resulting from it by operation of law, could establish the profit which the plaintiff would have made upon the merchandise so manufactured. In the case of *Heckscher* v. *Trotter*, 48 *N. J. L.* 421, Mr. Justice Dixon, quoting from *Petersd. Bail* (the law being that an attachment will lie only if the plaintiff would have been entitled to hold the defendant to bail upon filing an affidavit of the cause of action), says: "The general rule adopted by all the courts is consistent and uniform, that where the cause of action arises from a debt or money demand, or where it sounds in damages, but the damages are capable of being ascertained with certainty by mere arithmetical computation, the defendant may be holden to bail as of course; but, on the other hand, where the cause of action consists merely in a right to recover some damages, but those damages are general, indefinite and undertermined or incapable of being reduced by calculation to a proper degree of certainty without the intervention of a jury, the defendant cannot be holden to bail as of course." The principle was recognized as far back as *Jeffrey* v. *Wooley*, 5 *Halst.* 123.

There have been numerous cases in our courts, most of them in the Supreme Court, in which this standard has been recognized and applied. Tested thereby, it seems to me in this case that by no extension of the term "liquidated" could the plaintiff's claim be brought within it. It was engaged in the business of manufacturing products involving a secret formula, and the conditions of manufacture must have been almost as variant as the days upon which the manufacture took place. Entering into the result are the endless elements which go to make up business profit and loss. To determine the profit, if any, a jury would be essential, and the defendant would have a right to test it before that body by cross-examination of witnesses. It would seem to me, therefore, that the claim of the plaintiff must be classified as unliquidated.

But it is said that the plaintiff could not succeed in its motion because of having entered a general appearance to the action. Here, again, it seems to me the plaintiff cannot prevail. The original affidavit filed in the cause was in statutory form, and averred the existence of a debt for which an attachment would lie. It was to the action as thus founded that the defendant entered an appearance. At that time the complaint now being dealt with had not been filed. When it was filed it was a complete departure from a cause of action within the affidavit filed, and is based upon a cause of action for which an attachment would not lie. When the appearance was entered it must have been upon the assumption that the plaintiff had a legal cause of action sustainable under a proceeding by attachment. When the complaint was filed it was for a cause of action of which the court in that form of procedure would have no jurisdiction. To permit a party to bring into court a defendant by attachment of its property based upon an asserted cause of action cognizable therein, and thereafter introduce a claim which, if filed in the beginning, would have nullified the proceeding, would be to sanction an imposition on the defendant and a perversion of the process of the court. When the defendant entered its appearance it was bound to anticipate the filing of any cause of

action for which an attachment would lie. It was not bound to anticipate a cause of action for which an attachment would not lie. Under these circumstances, it seems to me to be most inequitable that the defendant should be estopped by its appearance from contesting the right of action as now sought to be recovered. It also seems to me that this position is supported by ample authority in other cases under the act. In *Heckscher* v. *Trotter, supra,* it was said by Mr. Justice Dixon that, by appearing generally, the defendant acknowledged that due steps have been taken to bring him personally into court to answer whatever demands the plaintiff may *lawfully present in such action* as he has instituted. The same justice, speaking in *Winant* v. *Nautical Preparatory School,* 70 *N. J. L.* 367, says: "By this general appearance and pleading to the action the defendant conclusively acknowledged that he was legally brought into court. The cases cited [quoting cases], while they indicate that after such appearance the legality of the claim may be inquired into, did not suggest that a demurrer to the declaration could prevail. It may be that if the declaration presented a cause of action wholly outside of that for which the attachment issued, it would be stricken out on motion." Subsequently, in the same case—*Winant* v. *Nautical School,* reported in 27 *N. J. L. J.* 208—Mr. Justice Pitney, after quoting the language of Mr. Justice Dixon as above, says: "The final step in the nature of appearance is the present motion, which [like the present was to strike out the complaint] is expressly based on the ground of want of jurisdiction over the person of the defendant for the purpose of the unliquidated demand set up in the first count of the declaration. It seems to me plain that, in taking either of these steps, the defendant has not waived the objection now presented."

The same justice in *Sullivan* v. *Moffat,* 68 *N. J. L.* 211, had before him the precise question here presented, and says: "The plaintiff insists that this motion is precluded by the general appearance, and cites the decisions in *Connelly* v. *Lerche,* 56 *Id.* 95, and *Watson* v. *Noblett,* 65 *Id.* 506, to sup-

port the position. But those cases are not apt for the present purpose. In each the motion was to quash the writ and so to end the suit. Manifestly, that should not be done after a general appearance, for the writ had accomplished part of its purpose by bringing the defendant into court. But there is a plain distinction between quashing the writ and releasing porperty unlawfully attached under it, which is sufficiently pointed out by the opinions in *Heckscher* v. *Trotter, supra,* and *Moore* v. *Richardson,* 65 *N. J. L.* 531."

It must be recognized that the purpose of an attachment against a foreign debtor is, in its inception, to compel the appearance of a defendant having property in this state who is not otherwise within the reach of its process. To the end that he may receive notice, comprehensive advertisement is required by the act, and a long period of opportunity is afforded for an appearance. It is a harsh proceeding, and in many cases may work hardship against an owner of property within the state, but who may be resident beyond its limits by the sacrifice of his property or subjecting it to an unjust claim without his knowledge. It seems to me that, like all extraordianry process, it should be held within its own bounds. While the thirty-third section of the act declares that "it shall be construed in all courts in the most liberal manner for the detection of fraud, the advancement of justice and the benefit of creditors," as was said by the Supreme Court in *Connelly* v. *Lerche, supra,* "this provision was clearly not intended to give the courts, under decisions in this state, any right to uphold an attachment where there was not, in fact, proper ground therefor." A misuse of the process under the act is not for the advancement of justice, nor, ultimately, for the benefit of creditors.

The motion is in the alternative. The most that the de-defendant is entitled to ask is that that part of the motion which seeks to strike out the complaint should be allowed. The affidavit upon which the process was originally issued is adequate for the purpose, and, perchance, a complaint in accordance with the statute may by leave of the court yet be filed.

My conclusion is that the present complaint should not be permitted and should be stricken out. The attachment, of course, will remain, and for all valid purposes that the attachment may issue the defendant will be held to be in court, but not for those causes of action which lie outside of the claims for which an attachment will lie.

The parties in this action have stipulated that in the hearing of the present motion I should sit as and for the court *in banc* in one of its branches.