REPUBLIC OF CHINA AND KUO-HWA YU, PLAINTIFFS-RESPONDENTS, v. PONG-TSU MOW (ALSO KNOWN AS PANG-TSU MOW), DEFENDANT-APPELLANT.

Argued February 23, 1954—Decided April 5, 1954.

140

142

*Mr. David Stoffer* argued the cause for the appellant (*Messrs. Stoffer and Jacobs*, attorneys).

*Mr. Emory C. Risley* argued the cause for the respondents (*Messrs. Stryker, Tams & Horner*, attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from an order of the Superior Court, Law Division, denying defendant-appellant's motion to quash a writ of attachment and the levy made thereunder, and to set aside two orders directing the issuance

of the writ and substituted process, *R. R.* 4:77–2(*a*)(*b*). The appeal is apparently taken under *R. R.* 2:2–3(*a*)(3) on the theory that a question of jurisdiction is involved, but we prefer to treat the appeal as if it were taken with leave under *R. R.* 2:2–3(*b*) since if the appeal was sustained there was a possibility the action would have been terminated. The case has been certified here on our own motion pursuant to *R. R.* 1:10–1(*a*).

The plaintiff, Republic of China, is a foreign sovereign government duly recognized by the United States. The defendant, Mow, is a citizen of the Republic of China and was one of the agents of that government for a period from January 1, 1948 to April 30, 1951. It was the practice of that government to entrust to the defendant and others and place under their control large sums of money which the defendant was authorized to spend for governmental purposes.

In May 1949 two checks of the Bank of China, New York agency, in the sum of $985,000 were issued payable to the order of three individuals and in turn endorsed by them to the order of the defendant Mow and the plaintiff Yu, another agent of the Republic of China. These two in turn endorsed the checks and they were deposited in a bank account with the Bank of Montclair (to which the National Newark and Essex Banking Company of Newark is successor). The said deposits were made subject to withdrawal only upon the joint signatures of Mow and Yu. Since that time there have been withdrawals and there now remains to the credit of said account the sum of $675,000.

The affidavits upon which the application for the writ of attachment was based show that the joint depositor, Yu, has at all times been and is now ready and willing to join in the payment of the balance in said bank account to the Republic of China and its regularly recognized officials. The affidavits allege that Mow has failed and refused so to do in defiance of the order of his government and has fled to and remains in Mexico, and that such refusal of Mow deprives the Republic of China of the balance deposited to the credit of the said bank account to which it is lawfully entitled and

constitutes a conversion thereof by Mow for which damages are claimed in favor of the Republic of China.

The appellant's motion in the court below is based in a large part upon the pendency of an action instituted on November 14, 1951, in the United States District Court for the District of Columbia by the Republic of China against one Mow and one Hsiang. The action was one in equity for injunctive relief and to compel an accounting of the funds entrusted to or placed under the control of the defendant. A temporary restraint was issued against the defendants upon the filing of the complaint and Mow subsequently entered an appearance in the action and moved to dismiss it on numerous technical grounds, and actively opposed the issuance of a preliminary injunction against him. The motion to dismiss was denied and an order was entered enjoining Mow from transferring or otherwise disposing of any of the moneys or properties involved. 101 *F. Supp.* 646 (*D. C. D. C.* 1951). The action of the District Court was affirmed on appeal, 91 *U. S. App. D. C.* 324, 201 *F. 2d* 195 (*C. A. D. C.* 1952), and *certiorari* was denied on April 6, 1953, 345 *U. S.* 925, 73 *S. Ct.* 784, 97 *L. Ed.* 1356.

The action proceeded on the failure of Mow to appear for depositions. As a result of this refusal all his pleadings were stricken and a default judgment was entered against him, among other things making permanent the preliminary injunction and directing Mow to render an accounting of all moneys and properties entrusted to him by the Republic of China and to pay over to it all the said moneys and properties not properly expended. The cause was referred to an auditor to hold hearings and make a report and the cause is still pending. Mow in the meanwhile had gone to Mexico and is presently imprisoned because of some dispute over an extradition proceeding which is irrelevant insofar as the questions before this court are concerned.

The trial court held that both of the depositors, Mow and Yu, had acquired a legal right in the bank account, including the right of withdrawal, but that they held these rights in trust for the plaintiff, and that Mow's refusal to surrender his rights in the bank account on demand was tantamount

to an appropriation of them by Mow, and while conceding he cannot transfer the funds the court very aptly said "what he refuses to give up is the key to the vault so far as these funds are concerned." The court felt the cause was controlled by the decision of *Manufacturers' Casualty Ins. Co. v. Mink*, 129 *N. J. L.* 575 (*Sup. Ct.* 1943), and the cases cited therein. See 1 *Chitty Pleading* (*6th ed.*) *p.* *8(2).

The appellant argues that resort to attachment under the facts and circumstances in this case amounts to an abuse of this limited statutory process. He argues it is an abuse of the process to resort to attachment where a claim of ownership had not been honored. Further, he argues that a default judgment, the permanent injunction against the transfer of the various bank accounts, including the one here involved, and the mandatory injunction to pay to the Republic all unexpended funds, necessarily depended upon the recognition of the Republic's claim of equitable ownership, and that in the action here by the Republic and its agent in attempting to attach proceeds of this account they are proceeding to reach it by attachment as "property" of the defendant. *N. J. S. 2A*:26–2.

It is further contended that the positions taken by the plaintiffs in these two suits are inconsistent since in the Federal District Court case there is asserted a claim of equitable ownership, while in this case an attempt is made to reach the moneys as "property" of the defendant and a conversion is alleged.

 The jurisdiction by attachment is not general but a limited one and hence jurisdiction must be shown and will not be presumed. On the other hand the doctrine of election of remedies is not in the strict sense a jurisdictional question since it is the plaintiff who has the right to elect which of two inconsistent rights he intends to exercise. The court cannot deny him the right to elect which course he will choose, and where he makes an election the court has no right to change the cause of action to the other inconsistent remedy since the court has jurisdiction over both rights of actions or remedies. 20 *C. J., p.* 4, 28 *C. J. S., Election of Remedies,* § 2. The doctrine of election of remedies is

generally grounded in the principles of waiver or estoppel. *Blum Bldg. Co. v. Ingersoll*, 99 *N. J. Eq.* 563 (*Ch.* 1926); *Lizak v. Rottenbucher*, 140 *N. J. Eq.* 76, 81 (*Ch.* 1947). But under the new rules the mere filing of a complaint is not the decisive act, and it is to be noted in this case, which was instituted by attachment, that the complaint itself has not as yet been filed. Under the present rules the Superior Court is empowered to grant the plaintiff the remedy he prefers under a practice allowing him, barring special equities favoring his adversary, freedom to shift his ground to seek alternative legal remedies, and he is not deemed to have waived his right by merely filing the complaint. In certain situations he may await the close of the proofs at the trial to make his election. *Ajamian v. Schlanger*, 14 *N. J.* 483 (1954).

█ It seems quite clear from the facts alleged that the money originally belonged to the Republic of China and not to Mow, and that it was entrusted to him as an agent of the plaintiff-Republic, the scope and nature of the agency not being clear but the agency apparently is not denied. The general rule is that it is not ordinarily competent for an agent who has received money or property from or for his principal, and who is called upon to account for it, to undertake to show that it did not then belong to his principal. His act in receiving it as the principal's is, in a sense, an acknowledgment of the principal's title, and the agent may not officiously make himself the protector or defender of the rights of some other alleged owner who is making no claim for himself. *Mechem on Agency* (*4th ed.*), *section* 534.

█ Where an agent has received money from his principal and has refused on demand to return it, his act becomes the equivalent of a tortious conversion to his own use, but the principal has the election to waive the tortious conversion and sue in *assumpsit* or implied contract for moneys held to his use. *Colton v. Gross*, 3 *N. J. Misc.* 170 (*Sup. Ct.* 1925); *Manufacturers' Casualty Ins. Co. v. Mink, supra,* and the cases cited there. See also *Restatement of the Law of Agency, section* 402, *comment* (*d*); *section* 403, *comment* (*b*). 1 *Chitty Pleading, p.* *100.

The common law action of *assumpsit* rests upon equitable principles and an equitable right, and the jurisdiction at law is concurrent with that of a court of equity. *Capraro v. Propati*, 127 *N. J. Eq.* 419, 424, 425 (*E. & A.* 1940). And under our statute, *N. J. S.* 2A :26–2, *par.* (*d*), a writ of attachment can issue on a claim of an equitable nature as to which a money judgment is demanded against the defendant who is a non-resident. Where the proceeding is against one of several joint debtors and the other joint debtor are non-residents, a writ of attachment may issue, but it may not issue where one of the joint debtors is a resident of this State. *Corbit v. Corbit*, 50 *N. J. L.* 363 (*Sup. Ct.* 1888). It is conceded in this case that both Yu and Mow in whose names this joint account is are non-residents of this State.

As to the doctrine of election of remedies, an action in implied *assumpsit* or *assumpsit* will not be inconsistent with the assertion of the equitable right on which the action in the District of Columbia was premised, because these are concurrent remedies and a principal may sue an agent either in *assumpsit* or in an action calling upon him to account for the money which came into his hands belonging to the principal, and which form of remedy is used depends upon the particular facts of an individual situation. *Mechem on Agency, supra, section* 533. *Cf. Manufacturers' Casualty Ins. Co. v. Mink, supra.*

In view of the fact that the statute permits the issuance of our writ of attachment on an equitable right it is immaterial in whom the technical legal title may be, and our statute is broad enough as revised to permit an attachment against "rights and credits, moneys and effects, goods and chattels, and real estate." *Cf. R. S.* 2 :42–5; *L.* 1948, c. 358 and *N. J. S.* 2A :26–2. The rights and credits of Mow in the joint account are sufficient personal property of the defendant to be subject to attachment under the statute, *N. J. S.* 2A :26–2.

The principle reliance of the appellant is on the case of *Redzina v. Provident Institution for Savings*, 96 *N. J. Eq.* 346 (*E. & A.* 1924), which involved an action in interpleader.

148

But this case is distinguishable upon two grounds, first, one of the joint owners of the bank account was a resident of this State, they were not both non-residents. *Cf. Corbit v. Corbit, supra.* Secondly, the contract with the bank was such that payment could only be made on the presentation of the passbook, which is not the case here, and without the passbook the court in order to determine the title to the property would have to rewrite the contract of the bank with the depositor, and the delivery of the passbook could not be compelled until personal jurisdiction was obtained over the non-resident who apparently had the passbook.

The effect of an attachment or execution against the interest of two owners of a joint account makes the owners tenants in common, and under such attachment or execution the debtor's interest in such an account may be seized. *Dover Trust Co. v. Brooks,* 111 *N. J. Eq.* 40 (*Ch.* 1932).

While it is true here that this account cannot be transferred without the joint signatures of Yu and Mow, both of whom are agents of the Republic of China, the possibility still remains that it is within Yu's power if he so desires to join with his co-agent Mow to transfer or collect the funds in the joint account. The writ of attachment in this case has the effect of merely preserving the *status quo* until the determination of their principal's claim to ownership of the funds entrusted to them.

As to the further argument that the property here in question may be protected through the use of process issuing out of the proceedings in the Federal District Court for the District of Columbia, it appears that any relief obtainable there under *Fed. Rules Civ. Proc., Rule* 70, or 28 *U. S. C. A., section* 1963, must await a final judgment in that proceeding. See the note in 28 *U. S. C. A., section* 1963.

The orders appealed from are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN— 6.

*For reversal*—None.