STEPHEN WHALEN, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF GEORGE WHALEN, DECEASED, AND STEPHEN WHALEN, GENERAL ADMINISTRATOR OF THE ESTATE OF GEORGE WHALEN, DECEASED, PLAINTIFFS, v. JAMES S. YOUNG, DEFENDANT-RESPONDENT, AND CARL HELM AND L. & H. TRANSPORTATION, INC., A BODY CORPORATE, DEFENDANTS-APPELLANTS.

Argued March 29, 1954—Decided May 3, 1954.

*Mr. Charles A. Rooney* argued the cause for the defendants-appellants Carl Helm and L. & H. Transportation, Inc.

*Mr. H. Frank Pettit* argued the cause for the defendant-respondent James S. Young.

The opinion of the court was delivered by

HEHER, J. The issue raised by this appeal is one of jurisdiction involving the defendants alone.

The action was brought on June 14, 1951 to recover damages for the pecuniary loss suffered by the next of kin of plaintiff's decedent, George Whalen, in consequence, it is said, of his death by the wrongful act, neglect or default of the defendant, James S. Young, as provided by *R. S.* 2:47–1 *et seq.,* now *N. J. S.* 2A:31–1 *et seq.,* and as well damages for pain and suffering endured by the deceased and the expenditures made for his medical care.

The fatality occurred August 4, 1949, as the result of a collision between a tractor-trailer operated by the defendant Young and a motorcycle driven by one Ross on which the

deceased was riding. Death came within a few hours, it is averred, on the very day of the accident.

The complaint alleged that Young, a resident of Pennsylvania, was the owner of the tractor-trailer; and he was served with process through the Director of the Division of Motor Vehicles in the Department of Law and Public Safety of New Jersey pursuant to *R. S.* 39:7–2, as amended by *L.* 1949, c. 190. There was a later amendment of this section. *L.* 1950, *c.* 251. Young answered denying negligence and pleading contributory negligence and assumption of risk; and he counterclaimed for personal injury and damage to his vehicle. There was an answer denying the counter-allegation of fault.

On January 30, 1952, by leave of court, Young interposed a third-party complaint charging that L. & H. Transportation, Inc., "by Carl Helm, owner of the corporation," was the "employer" of Young, and in the operation in question, he, Young, was the "agent, servant or employee" of Helm and the corporation, and as such "had been directed to Pittsburgh * * * to pick up some freight on behalf" of the corporation, under an "agreement" that the corporation would, *inter alia*, provide "liability insurance" coverage "for the trip in accordance with the usual custom of the trade." There was a demand for judgment against Helm and the corporation, both residents and domiciliaries of Pennsylvania, "for any and all relief * * * adjudged against" Young in favor of the plaintiff administrator.

On August 14, 1952, on motion made by the corporation, the third-party complaint was dismissed. The order does not reveal the ground of dismissal; the reasons set down in the formal notice of the motion to dismiss were the failure to allege leave of court under *Rule* 3:14–1, now *R. R.* 4:14–1, and the asserted want of "identity or relation" between the plaintiff's claim against the defendant and the defendant's claim pleaded in the third-party complaint, which was said to be "premature." A "more definite statement" of the third-party claim was asked; also a "severance" of the "third-party complaint from the main action," for fear of prejudice

to the defendants, particularly the third-party defendant, and a "stay of the trial of the third-party complaint."

On January 26, 1953 the plaintiff, with leave of court, filed an amended complaint reiterating that Young was the "owner" of the tractor-trailer in question, but also alleging, by several averments, that the vehicle was owned, operated and managed by Helm and the corporation, and its operation by Young at the time of the mishap was in pursuit of their business; and there was a prayer for judgment against all three defendants, jointly, severally, or in the alternative. Again, there was service upon the Director of the Division of Motor Vehicles of process directed to Helm and the corporation, and due notice was given to these defendants by registered mail.

The added defendants answered, February 16, 1953, denying the allegations of the complaint, and, by separate defenses, they disclaimed negligence, pleaded contributory negligence, assumption of risk, negligence by the operator of the motorcycle and a joint or common enterprise for gain between him and the deceased which rendered the negligence of one attributable to the other, and the bar of *R. S.* 2:47–3, now *N. J. S.* 2A:31–3, as an action not brought within two years after the death of the deceased. An amended answer, filed two days later, alleged that the cause of action for pain and suffering, pleaded by plaintiff as the deceased's general administrator, was not commenced within two years after the "cause of action accrued against" Helm and the corporation, and "is therefore barred by the statute of limitations."

On March 4, 1953 Helm and the corporation gave notice of a motion for summary judgment on the amended complaint as pleading causes of action barred by the statute of limitations; and on December 15, 1953, the motion was granted as to the first count, but denied as to the second count, and judgment was entered accordingly.

On April 17, 1953 the defendant Young interposed a cross-claim against the defendants Helm and L. & H. Transportation, Inc., reiterating the allegations of the dismissed third-party complaint as to agency and the "agreement" for in-

demnity insurance coverage in favor of Young in keeping with the "usual custom of the trade," and praying relief in the same terms.

Helm and the corporation immediately moved, in lieu of answer, for a dismissal of the cross-claim on these grounds: (a) estoppel against asserting the cross-claim by the prior dismissal of the third-party complaint, from which there was no appeal, and by conduct; (b) the issues raised by the cross-claim "cannot be conveniently tried with the issues stated in the complaint," and so the cross-action is not permissible under *Rule* 3:13–6, now *R. R.* 4:13–6; (c) the want of "identity or relation" between the plaintiff's claim against Young and Young's cross-claim, and the "cross-claim is premature"; (d) the want of *in personam* jurisdiction "with respect to the claims presented in the cross-claim," in that *R. S.* 39:7–2 does not cover the subject matter of the cross-claim. And there was a renewal of the prayers for a more specific statement of the claim, particularly as to the terms and conditions of the "agreement" for liability insurance coverage, severance and stay, embodied in the earlier motion to dismiss the third-party complaint.

During the pendency of this motion, Young, this time without leave, served an amended cross-claim on Helm and the corporation, alleging additionally that under "appropriate regulations of the Interstate Commerce Commission pursuant to Federal statutes relating thereto," the corporate defendant "was required to carry public liability insurance for the protection of the plaintiff herein in the event of the negligent operation of a motor vehicle operating in interstate commerce under the rights belonging to" the corporate defendant, and "such insurance coverage as required by said I. C. C. regulations was effective during the tip to Pittsburgh," and "was for the benefit" of Young "to the extent" that if Young "was guilty of any negligence in the operation of the motor vehicle as alleged" by the plaintiff, "said insurance policy would be for the protection of all parties concerned"; and, in addition to the relief sought by the earlier cross-claim, Young demanded that Helm and the corporation defend the action

on his behalf and "pay the costs" already incurred by him in defense of the action, including a "reasonable attorney's fee," and render such damages as Young "has sustained" by reason of their "refusal * * * to so defend."

Helm and the corporation moved forthwith, in lieu of answer, for a dismissal of the amended cross-claim thus tendered on the same grounds advanced in the notice of motion addressed to the original cross-claim, and also for the reason that the amendment was filed without the permission of the court consider requisite under *Rule* 3:15-1, now *R. R.* 4:15-1.

The motion to dismiss the cross-claim was denied, and leave to amend was given according to the submission on file. As to the point of jurisdiction, the inclusion of other grounds for dismissal not related to jurisdiction was deemed "equivalent to a general appearance under the cross-claim." *Whalen v. Young*, 28 *N. J. Super.* 543, 555 (*Law Div.* 1953).

The case is now here by our own certification of an appeal to the Appellate Division taken by Helm and the corporation.

The insistence is that the statutory provision for service of process upon a non-resident owner or operator of a motor vehicle involved in an "accident or collision occurring" in New Jersey does not include "a cross-claim arising out of an alleged insurance contract apparently made, if at all, outside of the State," and the defense of want of *in personam* jurisdiction is not waived where, as here, such defense is made by motion under *Rule* 3:12-2, now *R. R.* 4:12-2, and is joined with "other defenses."

The manifest design of the cross-claim is not the enforcement against a nonresident "chauffeur, operator or the owner" of a motor vehicle driven in New Jersey without state registration or license of a cause of action "arising out of or by reason of" an "accident or collision occurring within" New Jersey in which such motor vehicle, so operated, "is involved," but rather a contract allegedly made in Pennsylvania by Helm and the corporate defendant, residents and domiciliaries of Pennsylvania, to provide "public liability insurance" for the protection of the defendant Young, also resident and domi-

ciled in Pennsylvania, against the injurious consequences of the "negligent operation" of a motor vehicle engaged "in interstate commerce under the rights" of the corporate defendant, in accordance with the regulations of the Interstate Commerce Commission and the "usual custom of the trade." The nonresident defendant Young seeks by his cross-claim indemnity and exoneration for culpable negligence in the nonresident operation of his vehicle on a New Jersey highway by means of an *in personam* judgment against his nonresident codefendants, Helm and the corporation; and this is patently not a cause of action comprehended in the agency for the service of process created by waiver and consent implied from the acceptance of the "privilege" of using New Jersey's highways extended to nonresident "chauffeurs, operators and owners" of motor vehicles unlicensed here under *R. S.* 39:7–2, as amended in 1949.

The cross-claim is not a civil action or proceeding against a nonresident "chauffeur, operator or the owner" of a motor vehicle "arising out of or by reason of" an "accident or collision occurring within" New Jersey in which such motor vehicle "operated by such chauffeur or operator or such owner is involved." The statute constitutes an exercise of the police power for safety in the use of the State's highways and the redress of injury to persons and property consequent upon the negligent or unlawful use of such facilities. The statutory agency for constructive or substituted service of process subjecting the nonresident defendant to the full legal consequence of personal service within the jurisdiction is predicated upon the actual consent of the defendant impliedly given by the acceptance of the State's invitation to use its highways without state registration or license, and it is therefore to be confined within the usual connotations of the legislative expression. The normal sense and significance of the terms measures the consent given by the acceptance of the use invitation; it is neither more nor less. The provision is to be assessed in the context of the constitutional principle secured by the due process clause of the Fourteenth Amendment, in keeping with state sovereignty and inherent

individual right, that no state can exercise direct jurisdiction and authority over persons or property beyond its boundaries.

The act is to be read as it stood at the time of the mishap which gave rise to the action. We are not here concerned with the subsequent amendment of the provision effected by *L.* 1950, *c.* 251, couched in somewhat different language. It does not have a retrospective operation; the amendment of 1949 controls.

Save as restrained by the Federal Constitution, the several states of the Union are sovereign and independent. Every state has exclusive jurisdiction and sovereignty over persons and property within its territory; and, by the same reasoning, no state has extraterritorial jurisdiction or control of persons or property; neither its laws nor its judicial process can have direct force beyond its borders; basically, a judgment purely *in personam*—*i. e.*, determining the defendant's personal rights and obligations, without actual service of process within the jurisdiction upon the defendant or upon some one authorized to receive service for him, or by a voluntary appearance and submission to the jurisdiction, is *coram non judice.* This was early deemed to be elementary principle, fundamental in the compact that brought the states into union and in natural justice. *Pennoyer v. Neff,* 95 *U. S.* 714, 24 *L. Ed.* 565 (1878). But one's relation to the State may affect the right to sue and to invoke its judicial process.

Historically, the jurisdiction to render judgment *in personam* is grounded in the court's *"de facto* power over the defendant's person,"* and so his presence within the territorial jurisdiction of the court was prerequisite to rendition of a judgment binding him personally; but now that the *capias ad respondendum* has yielded to personal service of a summons or other form of notice, due process for a judgment *in personam* is satisfied if the defendant, "not present within the territory of the forum," have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. State of Washington,* 326 *U. S.* 310,

66 *S. Ct.* 154, 90 *L. Ed.* 95, 161 *A. L. R.* 1057 (1945). *Vide:*
*Milliken v. Meyer,* 311 *U. S.* 457, 61 *S. Ct.* 339, 85 *L. Ed.*
278, 132 *A. L. R.* 1357 (1940). In the former case, it was
held that the "presence" of a body corporate in the state
sufficient for this purpose is symbolized by those activities of
its agents within the state "which courts will deem to be
sufficient to satisfy the demands of due process." The ques-
tion, said Stone, C. J., is whether the "contacts" of the
corporation within the state of the forum are such as to
"make it reasonable, in the context of our federal system of
government, to require the corporation to defend the par-
ticular suit which is brought there." The Chief Justice
continued: " 'Presence' in the state in this sense has never
been doubted when the activities of the corporation there have
not only been continuous and systematic, but also give rise
to the liabilities sued on, even though no consent to be sued
or authorization to an agent to accept service of process has
been given"; but the "casual presence of the corporate agent
or even his conduct of single or isolated items of activities
in a state in the corporation's behalf are not enough to
subject it to suit on causes of action unconnected with the
activities there," for to require the corporation in such cir-
cumstances to defend the suit "away from its home or other
jurisdiction where it carries on more substantial activities
has been thought to lay too great and unreasonable a burden
on the corporation to comport with due process." There is
some conflict of view as to the nature of the operations within
a state which will render a corporation amenable to suit on
causes of action arising from dealings entirely distinct from
such activities. But that problem is not in this case.

By such use of the State's highways, the nonresident
actor renders himself subject to suit and judgment *in per-*
*sonam* through the constructive or substituted service of proc-
ess provided for in the statute. It is there ordained, *R. S.*
39:7–2, that the "acceptance of such privilege" or the "opera-
tion of such motor vehicle" shall be the "signification of
such chauffeur or operator or such owner of his or their
agreement that any such process against him or them which is

so served shall be of the same legal force and validity as if served upon him or them personally." Such consent may be a pure legal fiction where the nonresident user of the State's highways is not aware of the statutory mandate, but the use, related as it is to the public safety and security, is of a nature such as to justify the fiction. *International Shoe Co. v. State of Washington*, cited *supra.*

The earlier statute, *L.* 1908, *c.* 304, required a formal appointment by the nonresident motorist of an agent for the service of process. *Kane v. State of New Jersey*, 242 *U. S.* 160, 37 *S. Ct.* 30, 61 *L. Ed.* 222 (1916). But the state may, as it has done here, declare such use of the highway by a nonresident to be the equivalent of a formal designation of a given state officer for the purpose. There is no difference of substance, related to the due process clause of the Fourteenth Amendment, between an express appointment and agency implied from the highway use. The mere transaction of business in a state by nonresident natural persons does not imply consent to be bound by the process of its courts. But a state may not withhold from nonresident individuals the right to do business within its borders. This by virtue of the privileges and immunities clause of the Federal Constitution, *Article* IV, *section* 2. Yet there are inherent dangers to person and property in the operation of motor vehicles that make such use of the public highways regulable "to promote care on the part of all (users), residents and nonresidents alike," and to render a nonresident answerable for his misconduct in such use through the state's judicial process, in a proceeding that is at once a convenient and effective means of enforcing the claimant's cause of action in the jurisdiction where the cause of action arose; and to this end the state may exclude a nonresident until the agency for the service of process is formalized or make the use of the highway the equivalent of express designation, *Hess v. Pawloski*, 274 *U. S.* 352, 47 *S. Ct.* 632, 71 *L. Ed.* 1091 (1927), if there be provision for notice to the nonresident of such service of process. *Wuchter v. Pizzutti*, 276 *U. S.* 13, 48 *S. Ct.* 259, 72 *L. Ed.* 446 (1928).

The Massachusetts statute considered in *Hess v. Pawloski*, like our own, limited the implied consent by user to proceedings founded in accidents or collisions on a highway in which the nonresident was involved; and this limitation would seem to be grounded in the stated constitutional considerations, and to be peremptory in its operation. In treating of the fundamental question, Professor Austin Wakeman Scott concluded that a state may subject a nonresident "doing acts within the state," involving danger to life or property, to the jurisdiction of the courts of the state as to causes of action "arising out of those acts"; in particular, a state may subject a nonresident "operating" an automobile within the state to the jurisdiction of the courts of the state as to causes of action "arising out of the operation of the automobile." *Jurisdiction Over Nonresident Motorists*, 39 *Harvard Law Review* 563 (1926). The rule of the *Restatement* is that such jurisdiction is limited to a nonresident individual "who does acts or owns things in a state," dangerous to life or property, and to causes of action arising out of "such acts or such ownership." *Restatement, Judgments, section* 23 (1942).

It is a corollary of these principles, substantive rather than merely procedural in nature, and imperative in force, that the answer on the merits interposed by Helm and the corporation to plaintiff's amended complaint, a proceeding invoking the cited statute for a judgment *in personam,* and their subsequent motion for a summary judgment on the complaint, did not constitute a submission to the general jurisdiction of the court, but was rather a defense to an action for negligence under the special and limited statutory jurisdiction directed to the entry of a judgment *in personam* against nonresidents who were beyond the State's judicial cognizance save for culpable acts or conduct within the State of the statutory class. The legal consequence of the appearance and answer is of necessity determined by the statute conferring the jurisdiction.

The implied consent to constructive or substituted service of process for an *in personam* judgment is restricted

to a *delictum* attending the nonresident's use of the highways as provided in the statute; and a contractual undertaking by nonresidents to indemnify the nonresident user of the highway from the legal consequences of such fault would not render the nonresident indemnitor amenable by constructive service to *in personam* process in a New Jersey suit. The brief submitted by the defendant Young conceded that he was the owner of the tractor-trailer; the amended complaint alleged that in the particular transaction, Young was the servant and agent of Helm and the corporation; and the essence of Young's cross-claim is the alleged contract of indemnity. The claim made by the amended complaint is *ex delicto*; the cross-claim pleads an action *ex contractu*, an independent suit. Unless Helm and the corporation answered Young's complaint, there would have been judgment by default. To hold that by doing so they submitted to the general jurisdiction of the court, and thus subjected themselves to the action *ex contractu* pleaded in the cross-claim, would subvert the statutory policy and deprive these defendants of a constitutional immunity from the extraterritorial reach of the process of the New Jersey court.

This disposes of the point argued by the defendant respondent Young.

■ But it is also to be said, anent the ground taken by the Law Division of the Superior Court, that the motion to dismiss the cross-claim did not constitute a general appearance and thus a submission to the general jurisdiction of the court. Want of jurisdiction was asserted, and it is immaterial that other reasons related to the merits were assigned in support of the motion.

This course was permissible under *Rule* 3:12–2, now *R. R.* 4:12–2. Indeed, the rule provides that "Special appearances are superseded," and "No defense or objection is waived by being joined with one or more other defenses or objections in an answer or motion." See, also, *Rule* 3:12, now *R. R.* 4:12–2, relating also to cross-claims. The case of *Trautman v. Higbie*, 10 *N. J.* 239 (1952), is not in point. There, as noted by Mr. Justice Oliphant, the particular defendant

"made his motion for summary judgment first and later made his motion attacking the jurisdiction of the court." And there was no cross-claim in that case. There was not a voluntary submission to the general jurisdiction of the court, as in *Adam v. Saenger*, 303 *U. S.* 59, 58 *S. Ct.* 454, 82 *L. Ed.* 649 (1938).

We are not here dealing with a case involving the doing of justice between joint judgment debtors, by controlling execution to that end.

The judgment is reversed; and the cause is remanded for further proceedings not inconsistent with this opinion.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*For affirmance*—Chief Justice VANDERBILT, and Justices JACOBS and BRENNAN—3.