33 N.J. Super. 24 (1954)
108 A.2d 891
REPUBLIC OF CHINA, ET AL., PLAINTIFFS,
v.
PONG-TSU MOW, (ALSO KNOWN AS PANG-TSU MOW), DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 15, 1954.
*26 Messrs. Stryker, Tams & Horner, attorneys for plaintiffs.
Messrs. Stoffer and Jacobs, attorneys for defendant.
GAULKIN, J.C.C. (temporarily assigned).
This action was begun by a writ of attachment, issued September 14, 1953. The affidavit upon which the writ was issued stated that "the nature and particulars of said cause of action" were that plaintiff had entrusted to defendant Mow and others as its agents "large sums of money * * * more than $1,000,000," of which $985,000 had been deposited by said agents in a Montclair bank for the use and benefit of plaintiff, subject to withdrawal upon the signature of defendant and Yu, the co-plaintiff; that there remained in said account $675,000; that plaintiff had directed Mow and Yu to "turn over immediately all the government funds" to designated officials of the Republic of China, which Yu was willing to do, but which Mow refused to do. Instead Mow had "fled from the United States to Mexico where he now remains." This, said plaintiff in the affidavit, "constitutes a conversion * * * by said Mow * * *" (of the $675,000) for which "the plaintiffs claim damages in favor of the Republic of China against Mow in the sum of $800,000." The affidavit concluded that "Mow is a non-resident of the State of New Jersey * * * He has been arrested by and is in custody of Mexican authorities and is confined in prison in Mexico City Mexico." It is agreed that Mow is still there.
The writ, of course, followed the affidavit, and directed that the property to be attached "shall not exceed in value the sum of $800,000." Under the writ, Mow's right, title and interest in the $675,000 deposit was attached. Plaintiffs' complaint, filed September 18, 1953, was identical with the affidavit in all respects here material, and demanded damages "in the amount of $800,000."
At that time there was pending in the United States District Court for the District of Columbia a plenary action which had been instituted by the Republic of China against Mow by complaint filed November 14, 1951. Mow had filed *27 a general appearance in that action on December 3, 1951. That action alleged that approximately $50,000,000 had been entrusted to Mow, demanded an accounting of his handling of much of it, and sought to reach about $7,000,000 alleged still to be in his possession, of which the $675,000 above mentioned was expressly alleged to be a part.
Mow moved to quash the writ of attachment on the grounds that:
"The affidavit upon which the writ of attachment was issued sets forth a controversy with respect to the ownership of a joint bank account, therein described, which this Court cannot determine without personal jurisdiction of defendant.
The plaintiffs' application for the issuance of the writ of attachment was an abuse of the process of the Court in view of the prior institution by plaintiff, Republic of China, of proceedings in other jurisdictions involving the same controversy, and particularly of the pendency in the United States District Court for the District of Columbia of a proceeding in which that Court, having personal jurisdiction of the defendant herein, has made orders more specifically described in the annexed affidavit with reference to the joint bank account involved in this action.
The levy pursuant to said writ of attachment was made on a joint bank account claimed by the plaintiff, Republic of China, and is not property subject to attachment at the instance of the plaintiffs.
The substituted service of process provided for in the Order for Publication and Mailing dated September 18, 1953, should be vacated and set aside for the reason that the purported cause of action described in the affidavit filed by plaintiffs requires personal jurisdiction of the defendant."
This motion was denied, and the denial was affirmed by the Supreme Court. Republic of China v. Pong-Tsu Mow, 15 N.J. 139 (1954).
Mow then filed his answer in this action on April 23, 1953. In it
"He denies that plaintiff is the duly recognized government of the Nationalist Republic of China and says that the constitutional and only authorized government of the Republic of China is the Nationalist Government of the Republic of China of which General Li Tsung-chen is the Constitutional President. This action has not been authorized by said Constitutional President nor by any officer acting under him * * *.
* * * He denies that the office which he directed was abolished by any valid order of his government.
*28 * * * He admits that prior to April 1949 he had received funds which he expended for specified governmental purposes of the Republic of China. On January 21, 1949 Chiang Kai-shek resigned the office of President of the Republic of China and announced that as of that date Vice President Li Tsung-chen would exercise the duties and power of President, all in accordance with the Constitution of the Republic of China. During April of 1949 defendant together with plaintiff Yu and one T.K. Pee received upon instructions of Chiang Kai-shek, then a private citizen of the Republic of China, a total sum of approximately $10,000,000, with directions to place said sum in private accounts in the names of defendant, plaintiff Yu and said T.K. Pee. Said private accounts were to be opened without reference to any governmental purposes of the Nationalist Government of the Republic of China. The checks referred to in * * * the complaint comprise part of said sum of $10,000,000 and were deposited in the bank account referred to in * * * the complaint."
The orders to turn over the funds, Mow says in his answer, were "illegal * * * issued by unauthorized persons * * * [were] thereafter withdrawn and never enforced." The last of those orders, that of August 21, 1951, he says
"* * * he was instructed by General Li Tsung-chen, the Constitutional President of the Nationalist Republic of China, to disregard * * *, with which instructions he complied in accordance with his duty under the Constitution of the Nationalist Republic of China."
Mow then sets up the following separate defenses:
"This action was instituted without authorization of the Constitutional Government of the Nationalist Republic of China.
Plaintiffs have failed to furnish defendant any valid documentary evidence showing the source of, and the right of plaintiff Republic of China to receive, said sum of $675,000.00.
Defendant has not asserted any personal interest in said bank account, has at all times been willing to surrender the balance in said account to the true owner or owners upon a valid order of the constitutional authorities of the Nationalist Government of the Republic of China and has not converted said sum of $675,000.00 or any part thereof.
Defendant was instructed by General Li Tsung-chen, Constitutional President of the Nationalist Government of the Republic of China, to ignore as invalid the purported order of August 21, 1951 and to hold all funds pending further orders, which have not as yet been received by defendant.
In November 1951 plaintiff Republic of China instituted against this defendant and another an action in the United States District *29 Court, District of Columbia, claiming among other things equitable ownership of the bank account referred to in the complaint herein. Defendant entered an appearance in said action and such proceedings were thereafter had therein at the instance of said plaintiff as to constitute a binding election of remedies barring maintenance of the inconsistent claim of conversion made in the complaint herein."
On June 21, 1954 final judgment was entered in the action in the United States District Court for the District of Columbia, in favor of the Republic of China and against Mow in the sum of $6,368,503.47.
Plaintiff Republic of China now moves to file a supplemental complaint to add "a second count to recover" on that final judgment. The proposed second count would say:
"On June 21, 1954, a final judgment was entered in the United States District Court for the District of Columbia in a civil action therein pending bearing Docket No. 4741-51 in which the Republic of China was the plaintiff and Pang-Tsu Mow was a defendant, wherein it was adjudged, ordered and decreed, among other things, that the plaintiff, Republic of China, is entitled to have and recover of and from the defendant Pang-Tsu Mow, the sum of $6,368,503.47 with 6% interest thereon as provided by law and to have execution for said sum on any property of defendant, Pang-Tsu Mow, whereever found.
The aforesaid judgment was rendered for moneys of the plaintiff, Republic of China, which were determined to have been entrusted to or placed under the control of Mow and for which he was accountable and included therein was the sum of $675,000 deposited in a bank account with The National Newark and Essex Banking Company of Newark in the names of Pang-Tsu Mow and Kuo-Hwa Yu, more particularly referred to in the First Count of this complaint. A true copy of said judgment is annexed hereto and made a part hereof.
Said judgment remains unsatisfied to the extent of at least $5,000,000 and the defendant Mow is indebted to the plaintiff Republic of China for the balance due on said judgment with interest thereon.
WHEREFORE, the plaintiffs demand judgment in favor of the Republic of China and against the defendant Pong-Tsu Mow (also known as Pang-Tsu Mow) for the amount due on the judgment hereinabove referred to with interest thereon or for such part of said amount as the court has the power to render a judgment in this action."
Defendant opposes the filing of the supplemental complaint on numerous grounds. The one that looms largest before me at this point is the one of jurisdiction.
*30 The parties agree that whether to permit the filing of a supplemental complaint is a matter within the judicial discretion of the court. If, after the filing of a supplemental complaint which sets forth an in personam action, the court would have no jurisdiction over the person of the defendant, then to permit the filing of the supplemental complaint over the objection of the defendant would be an idle gesture. If that indeed be the situation here, it is reason enough to refuse permission to file it.
Plaintiff contends that this court has jurisdiction over this defendant, even though he be a non-resident, because he has filed a general appearance in the attachment action. Plaintiff argues that a supplemental complaint may be filed against a resident defendant who has entered an appearance, and that such a supplemental complaint may be served upon the attorney for the defendant, with no additional process. Galler v. Slurzberg, 22 N.J. Super. 477 (App. Div. 1952). Plaintiff says that this applies to non-resident defendants as well, at least where the supplemental claim is "for relief arising out of and related to" the original claim. The proposed action upon the judgment, says plaintiff, is such a claim  merely "a new form of the original claim," and it is therefore the proper subject of a supplemental complaint, even against a non-resident.
Two obstacles of course immediately occur to the plaintiff  first, that the amount sued for in the supplemental complaint is $5,000,000, whereas the pending action is for only $800,000; and second, that this is an attachment action in which defendant appeared under protest.
Plaintiff urges, but I think not too seriously, that even though it asks for $4,200,000, the supplemental action is not really a new action because the facts that gave rise to the liability of $800,000 demanded in the original action are part and parcel, and an incident, of the total cause of action that resulted in the District of Columbia judgment. A litigant would have every reason to be surprised to learn that an action for $5,000,000 is the same as an action for $800,000. Cf. Ex parte Indiana Transportation Co., 244 U.S. 456, 37 *31 S.Ct. 717, 61 L.Ed. 1253 (1917). Against the possibility that the court might hold that for $5,000,000 the supplemental complaint may not be filed, plaintiff expresses its willingness to limit its ad damnum clause in the supplemental complaint to $800,000, and (I presume) is willing to limit its recovery on both counts to said $800,000.
As to the fact that the pending action is an attachment suit, plaintiff says that makes no difference  that under R.R. 4:77-3 the practice and procedure in attachment actions "shall be as in other civil actions"; that under R.R. 4:4-6 "a general appearance * * * shall have the same effect as if the defendant had been properly served"; and therefore, after a non-resident defendant has entered an appearance in an attachment action, he is as vulnerable to a supplemental complaint as any resident defendant who appears generally in a plenary action. But rules, as well as statutes, have no greater effect than the requirements of due process permit. McMaster v. Gould, 240 N.Y. 379, 148 N.E. 556, 40 A.L.R. 792 (Ct. App. 1925); cf. 8 R.L.R. 273; 7 R.L.R. 247; Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938).
It is clear that the demands of due process forbid adjudication against a non-resident defendant, even though he has appeared generally, upon additional or distinct claims added without his consent after his appearance, unless he himself counterclaimed or invoked the affirmative assistance of the court. Ex parte Indiana Transportation Co., supra; Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Adam v. Saenger, supra; Restatement of the Law of Judgments, section 5(g); 12 Am. Jur., Constitutional Law, p. 298; Schuster v. Schuster, 9 N.J. Super. 11 (App. Div. 1950); Whalen v. Young, 15 N.J. 321 (1954); Swanson v. Swanson, 10 N.J. Super. 513, 521 (App. Div. 1950), affirmed 8 N.J. 169 (1951); Veith v. Horn, 5 N.J. Super. 622 (Law Div. 1949).
In every case in which added claims have been adjudicated against a non-resident defendant who appeared only to defend, the court has been careful to first determine that the added *32 claims grew "out of and are connected with the same transaction in which the litigation arose, and are germane to the object of the suit," Shepherd v. Ward, 5 N.J. 92, 111 (1950); Kase v. Kase, 18 N.J. Super. 12 (App. Div. 1952); Schuster v. Schuster, supra; Englander v. Jacoby, 132 N.J. Eq. 336, 339 (Ch. 1942); Galler v. Slurzberg, supra. "Persons, by becoming suitors, do not place themselves, for all purposes, under the control of the court." Swanson v. Swanson, supra, 10 N.J. Super. at page 522. "A party who appears in a cause submits himself to its jurisdiction in respect to those outreaches of the case which are reasonably to be anticipated," Englander v. Jacoby, supra, 132 N.J. Eq. at page 340, but only to those outreaches, Whalen v. Young, supra.
To determine what are "the outreaches reasonably to be anticipated" we may not forget that it was an attachment suit that defendant entered this State to defend. He did not come into New Jersey because he wanted to, but because he had to, if he desired to protect his interest in the attached property. It is admitted by plaintiff that in no other way, except by entering his appearance, could defendant protect his interest in the attached property, or be heard on the merits. He protested strongly, upon the grounds set forth above, even unto the Supreme Court. Thereafter he reluctantly entered his appearance, knowing he subjected himself to a possible general judgment of $800,000 upon the asserted claim. How can it be said that he should have, in addition, reasonably anticipated that by entering his appearance he might also subject himself to a general judgment of $5,000,000?
In Whalen v. Young, supra, defendant, a non-resident owner of a motor vehicle, and the driver, were sued because of an accident alleged to have been caused by defendant's motor vehicle upon a highway of New Jersey. He and the driver were served under the statute, through the Commissioner of Motor Vehicles. After the owner appeared and answered plaintiff's complaint, the driver served upon the defendant owner a cross-claim on an alleged special contract *33 of indemnity, made by the owner and the driver in Pennsylvania. The Supreme Court held that this cross-claim should have been stricken out upon defendant's motion, using the following language which is pertinent here:
"It is a corollary of these principles, substantive rather than merely procedural in nature, and imperative in force, that the answer on the merits interposed by Helm and the corporation to plaintiff's amended complaint * * * did not constitute a submission to the general jurisdiction of the court, but was rather a defense to an action for negligence under the special and limited statutory jurisdiction directed to the entry of a judgment in personam against nonresidents who were beyond the State's judicial cognizance save for culpable acts or conduct within the State of the statutory class. The legal consequence of the appearance and answer is of necessity determined by the statute conferring the jurisdiction.
* * * Unless Helm and the corporation answered Young's complaint, there would have been judgment by default. To hold that by doing so they submitted to the general jurisdiction of the court, and thus subjected themselves to the action ex contractu pleaded in the cross-claim, would subvert the statutory policy and deprive these defendants of a constitutional immunity from the extraterritorial reach of the process of the New Jersey court."
Had this been a plenary suit for $800,000 in which defendant had voluntarily accepted service and entered a general appearance, he would have been immune from the service of a summons in another civil action in this State while necessarily going to, staying at, or returning from a court. Younger v. Younger, 5 N.J. Super. 371 (App. Div. 1949). Even a non-resident plaintiff has that immunity, though he has himself invoked the jurisdiction of our courts. Randall v. Randall, 14 N.J. Super. 110 (Ch. Div. 1951); Swanson v. Swanson, supra. Cf. Ertag v. Haines, 30 N.J. Super. 225 (Law Div. 1954).
The reason for this rule applies to the facts at bar:
"Courts of justice ought, everywhere, to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them. The citizen, in every claim of right which he exhibits, and every defense which he is obliged to make, should be permitted to approach them, not only without subjecting himself to evil, but even free from the fear of molestation or hindrance."
Randall v. Randall, supra, 14 N.J. Super. at page 114.
*34 In Ex parte Indiana Transportation Co., supra, defendant, an Indiana corporation, was served with process within the territorial jurisdiction of the trial court, in an action for causing the death of one Dawson through the capsizing of defendant's steamer. Defendant appeared generally. Thereafter the trial court permitted "certain parties" to intervene. At this time the petitioner was no longer subject to service in the district and was not served with process. The "certain parties" were 373 other plaintiffs, each alleging a distinct cause of action for death due to the same accident. The United States Supreme Court held this was error, since the court had no jurisdiction over petitioner with respect to the added claims, saying [244 U.S. 456, 37 S.Ct. 718]:
"But appearance in answer to a citation does not bring a defendant under the general physical power of the court. * * * Not having any power in fact over the defendant unless it can seize him again, it cannot introduce new claims of new claimants into an existing suit simply because the defendant has appeared in that suit."
See also Reynolds v. Stockton, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464 (1891); Noah MacDowell & Co. v. Edward & John Burke, Ltd., 3 N.J. Misc. 740 (Sup. Ct. 1923); Heckscher v. Trotter, 48 N.J.L. 419, 424 (Sup. Ct. 1886); Wynant v. Nautical Preparatory School, 27 N.J.L.J. 202 (Sup. Ct. 1904). In the case of Noah MacDowell & Co. v. Edward & John Burke, Ltd., supra, and in Wynant v. Nautical Preparatory School, supra, the court considered the bringing in of a defendant by attachment on one claim, and compelling him to answer another, an abuse of process  a species of force or fraud to induce a defendant to enter the state for the purpose of being served. In the Wynant case Justice Pitney added:
"The defendant came into court in order to test the claim set up in the affidavit and referred to in the writ of attachment. To require it to litigate other demands would be as onerous  not to say odious  as the old practice of declaring `by the bye,' which was long ago abolished in this state."
*35 It seems to me that the cause of action tendered in the supplemental complaint is not one that should be permitted to be added against a non-resident. First, the added damages claimed are so grossly in excess of the damages asked in the original action that even if the motion were merely to amend the ad damnum clause in the original action from $800,000 to $5,000,000 it would be an abuse of discretion to permit it, assuming that any amendment is within the power of the court. Cf. Watson v. World of Mirth Shows, 4 F.R.D. 31 (D.C.S.D. Ga. 1944); Lanasa v. Beggs, 159 Md. 311, 151 A. 21 (Md. Ct. App. 1930); Gregory v. United States Fidelity & Guaranty Co., 105 Kan. 648, 185 P. 35, 37 (Kan. Sup. Ct. 1919). Second, the cause of action upon the judgment is so far different from the original cause of action which was the basis for the attachment that it must be considered, as pleaded, a new and independent action, no matter what the ad damnum clause seeks. Whether it is a new and independent action depends not on the ad damnum clause but upon the elements of the cause of action. Although grossly increasing the ad damnum of an existing cause of action against a non-resident may violate due process, the converse is not true  a separate cause of action may not be pleaded simply because no more dollars are sought from defendant than were demanded in the original action.
An action upon a judgment in personam is a separate and distinct action from the action on the claims which resulted in the judgment, for those claims are merged in the judgment, and thereafter the underlying claims may no longer be sued upon. Restatement, Judgments, section 47. And see Chemical National Bank of New York v. Kellogg, 28 N.J.L.J. 153 (Circ. Ct. 1905).
But beyond that, and laying that aside, we have here a judgment for $6,368,503.47, upon which more than $1,000,000 has been collected. How are we to say upon the proffered pleading that if the ad damnum clause is reduced to $800,000, or $675,000, it is only the $675,000 on deposit in New Jersey that is being sought? Were the ad damnum clause to seek a general judgment of $675,000 or $800,000, it could be supported *36 by proof that any portion of the judgment, in that amount, is unpaid. It would not be necessary to prove that it was the $675,000 originally sued upon that was unpaid  any $675,000 would do.
This does not mean that the plaintiff (or the defendant) may not, by appropriate pleading, bring in the judgment entered in the District of Columbia to allege its effect upon the pending litigation in New Jersey. Gonzalez-Fantony v. Fantony, 31 N.J. Super. 14 (App. Div. 1954). Even though plaintiff may not in this proceeding seek an independent recovery based upon the judgment, the fact nevertheless remains that the judgment may have adjudicated many or all of the issues between the parties. The affidavit of Warren Woods, Washington, D.C., attorney for defendant Mow, filed by defendant in support of his motion to quash the attachment, said:
"* * * Thus it is apparent that the precise amount of money involved in the New Jersey action has been involved in the District of Columbia action for almost two years and that any final determination of title to this money made in the District of Columbia action will control Mow's right to its use."
The motion to file the proposed supplemental complaint is denied.